THE STATE OF FLORIDA *ex. rel.* THE RAILROAD COMMISSIONERS, *Relators,* v. FLORIDA EAST COAST RAILWAY COMPANY, *Respondent.*

1.  The valid administrative orders of the Railroad Commissioners should be obeyed and those who are subject to such orders violate them at their peril.

2.  In seeking relief from orders or rules of the Railroad Commissioners thought to be unduly burdensome or otherwise illegal, railroad companies should apply to the Railroad Commissioners for changes or modifications of such orders or rules.

3.  While the conduct of a railroad company in violating an order
    made by the Railroad Commissioners without applying to
    the Commissioners for a change or modification of the order
    is emphatically disapproved by this court, yet if under changed
    conditions the order disobeyed would operate arbitrarily and
    be detrimental to the public welfare and violate constitutional
    rights of the carrier, the order will not be enforced.

4.  The initial discretion as to the means and manner of operat-
    ing a railroad is in those charged with its management. It
    should be exercised in accordance with law, in good faith and
    in the interest of the general welfare. Such discretion is
    subject to lawful governmental supervision and regulation to
    prevent abuses, unjust discriminations and other illegal
    actions or results.

5.  Rules and regulations adopted by the Railroad Commissioners
    for the lawful supervision and regulation of the service ren-
    dered by railroad companies are administrative in their na-
    ture, are presumed to be reasonable and just, and are subject
    to judicial review by appropriate proceedings.

6.  The special and general statutory authority given the Rail-
    road Commissioners to make and enforce reasonable and just
    regulations to require railroads to provide all necessary facili-
    ties and proper schedules to serve the uses, comfort and con-
    venience of the public, and to operate the roads for the public
    good, includes authority to make and enforce reasonable rules
    and regulations to require the furnishing of facilities for
    making connections between different roads for the use and
    convenience of the public.

7.  The duty of a railroad company to furnish reasonably ade-
    quate facilities is commensurate with the powers and privi-
    leges conferred upon the corporation and the just requirement
    of the public to be served by it. In determining the obliga-
    tion of the corporation in the discharge of its duties to the
    public the corporate business as a whole, the character of the
    service required, the need of its performance and the various
    rights of the public and of the carrier should be considered.

8.  All reasonable and just rules and regulations made by the
    Railroad Commissioners within the authority conferred upon

them by law, should be enforced to carry out the expressed purpose of the law in the interest of the general welfare; but unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners, and when regulations appear from the pleadings or the evidence in a case to be unreasonable and violative of constitutional provisions for the protection of private property rights, such unreasonable regulations will not be enforced by the courts.

9. Where it is in effect admitted by demurrer that the enforcement of an order of the Railroad Commissioners will be injurious to the public welfare and will violate constitutional rights of the carrier, the order will not be enforced even though the carrier failed to apply to the Railroad Commissioners for relief from the order before disregarding it.

This case was decided by the court En Banc.

This is a case of original jurisdiction.

The facts are stated in the opinion of the court.

*L. C. Massey,* for Relators.

*Alex. St. Clair-Abrams,* for Respondent.

WHITFIELD, C. J.—In a former opinion overruling a demurrer to the alternative writ herein it was held that the Railroad Commissioners had authority under the statutes of this State to make just and reasonable regulations of the schedules of railroads with reference to connections between different railroads, so as to afford reasonable convenience and comfort to the public affected by the service; and that all such regulations, when made, are by the statute declared to be prima facie reasonable and just. State ex rel. v. Florida East Coast Railway Co., 57 Fla. ..., 49 South. Rep. 43.

The respondent operates a railroad running north and south on the East coast of Florida connecting at Jacksonville with several lines extending into other States and at its southern terminus with steamboats for points further South. The Atlantic Coast Line Railroad Company operates a line of railroad from the southwestern coast of Florida through the State and to points in other States to the North. The two systems are connected at points on the peninsular of the State by branch roads operated by the respondent. The order made by the railroad commission affects the schedules on the respondent's main line as well as on its branches that connect with the Atlantic Coast Line road. The branch roads serve the local communities through which they run as well as the business between the two different roads; and the rights of such local communities should be considered in connection with the rights of others of the public and of the respondent company in determining the reasonableness of schedules that necessarily affect them all.

A return to the alternative writ has been filed and the relators have demurred to it. By this demurrer the relators admit the averments of the return which in effect are that the respondent in good faith and for the prompt dispatch and convenience of the great majority of its passengers, changed the schedule, as it believed it had the right to do, from the one ordered by the commissioners; that the schedule prescribed by the Railroad Commissioners was changed to properly serve business from its connecting lines at its terminals; that a change in circumstances affecting the bulk of its patrons necessitated the change made; that to operate the schedule as required by the Railroad Commissioners would delay and inconvenience daily from 2,000 passengers to over 2,500 passengers for the benefit and convenience of an average of from 2 to 7 through passengers at one connection and from 13

to 22 through passengers at the other connection; that the schedule now in operation is to enable respondent to make connections for the great mass of its passengers on its entire system; that the passenger trains carry as express fruit and vegetables that require rapid transit and certain connection at its Jacksonville terminal with trains going north and west beyond the State; that in effect the schedule and connections ordered by the Railroad Commissioners would seriously inconvenience the greater portion of respondent's passengers and entail undue expense and risk; that to make the schedule required would necessitate more rapid speed than can safely be made while preserving necessary and proper service at respondent's terminal points for the great volume of its business; that the service afforded to the passengers at the two connecting points is ample, and to make the change ordered would inconvenience the many to serve only a few; that special trains would be unreasonably expensive and burdensome because of conditions and for reasons stated; that for years past there has been a deficit between the earnings and expenditures of the respondent on its entire road; that owing to increase prices the deficit is steadily increasing as shown by a statement given; that the cost of the extensions of its road by respondents is not considered in stating the deficits and burdens as set out in the return; that the enforcement of the schedule order by the Railroad Commissioners would be an unreasonable burden on the respondent in particulars stated in the return, without any compensating advantage to the great mass of its patrons, but on the contrary would be a serious detriment and loss to respondent and to the great body of its passengers and rapid freight under conditions and in the particulars stated in the return.

The return of the respondent also avers in effect that every economy is practiced in the purchase of property

and in the employment of labor used in rendering the public service; that the obligations of the company bear only five per cent. interest; that the management and operation of the road are efficient and all proper means are used to render an adequate service at the least cost in order that the public may be properly served for the lowest charge.

It is urged by the relators that as the railroad company has violated the order of the Railroad Commission in changing its schedule without application to or permission from the commission, the company cannot here assert a right to disregard the order of the commission, but must first present its case to the commission for its action thereon.

While the order violated is administrative and not judicial the Railroad Commissioners are entitled to have their valid orders obeyed and the courts should recognize the obligation of railroad companies to accord proper respect to orders of the commission.

The initial discretion as to the means and manner of operating a railroad is in those charged with the management, who should be skilled, experienced, competent, faithful, well informed and alert to secure safe and adequate service and to avoid accidents, risks, losses and injuries that would result from incompetent, unskillful or unfaithful management. Such discretion should be exercised in accordance with law, in good faith and in the interest of the public welfare, and is subject to lawful governmental supervision and regulation to prevent abuses, unjust discriminations and other illegal actions or results. Rules and regulations adopted by the commissioners within their authority are presumed to be reasonable and just, and are subject to review as administrative matters, not by appeal or writ of error to correct mere errors or irregularities but in mandamus and other appropriate proceedings to test

the legality of the rules and regulations, when it is sought to enforce or to enjoin such rules and regulations. It is the duty of railroad corporations to obey the lawful orders, rules and regulations promulgated by competent State authority, and they violate such orders at their peril. In seeking relief from orders or rules thought to be unduly burdensome or otherwise illegal, the corporation should apply to the railroad commissioners for changes or modifications before resorting to the courts; and valid orders or rules of the commission should not be disregarded with impunity or without valid excuse.

While the conduct of the respondent in disregarding the commission is emphatically disapproved, yet if under the changed conditions alleged the order of the commission will operate arbitrarily, as would seem to be indicated by the averments of the return that are admitted by the relators through the demurrer, it would be unjust to respondent and to the great body of its patrons to enforce the order of the commission. The order, viewed in the light of the facts admitted, is apparently not a reasonable and just regulation, but it appears to be an arbitrary and unlawful order that if enforced will operate to the detriment of most of the respondent's patrons and to deprive the respondent of its property without due process of law and to deny the respondent the equal protection of the laws.

The special and general statutory authority given the Railroad Commissioners to make and enforce reasonable and just regulations to require railroads to provide all necessary facilities and proper schedules to serve the uses, comfort and convenience of the public, and to operate the roads for the public good within the statutory authority, includes authority to make and enforce reasonable rules and regulations to require the furnishing

of facilities for making connections between different roads for the use and convenience of the public.

Where a railroad, though wholly within a State, must, in order to properly serve the greater portion of its patrons, so schedule its through trains carrying passengers, mail and perishable freight, as to make prompt and regular connections at its terminal points with other lines of transportation extending into densely populated sections, in determining the reasonableness of a governmental relation affecting the schedules to be observed by such through trains, consideration should be given to the character and volume of the business requiring the terminal connections, the connections at the terminal points reasonably required to serve the through business, the volume of business demanding intermediate connections, the burdens and risks to be cast upon the carrier and the general public in making the intermediate connections, the benefits to be derived by the public and the carrier from the side connections, as well as other matters affecting the substantial rights of the local and general public and the carriers.

If the through trains, in view of the volume and character of respondent's through business or other considerations, cannot reasonably be required to make the desired intermediate connections, the railroad may be required to run special trains to serve the public at intermediate points or in local or lateral communities where the business warrants it and no unjust burden is thereby put upon the carrier with reference to its entire business.

The duty of a railroad company to furnish reasonably adequate facilities is commensurate with the powers and privileges conferred upon the corporation and the just requirement of the public to be served by it. In determining the obligation of the corporation in the discharge of its duties to the public the corporate business as a

whole, the character of the service required, the need of its performance and the various rights of the public and of the carrier should be considered.

All reasonable and just rules and regulations made by the railroad commissioners within the authority conferred upon them by law, should be enforced to carry out the expressed purposes of the law in the interest of the general welfare; but unreasonable regulations are not within the authority conferred by law upon the railroad commissioners, and when regulations appear from the pleadings or the evidence in a case to be unreasonable and violative of constitutional provisions for the protection of private property rights, such unreasonable regulations will not be enforced by the courts.

Whether exercised and performed directly or through the medium of administrative officers the power and duty of the legislature are to supervise and regulate within legal bounds the rendering of service of a public nature, and not to arbitrarily control and manage the business or property of those engaged in rendering the public service. Property of individuals or corporations used in rendering a public service is private property. Its use is subject to lawful and reasonable regulation in the interest of the public welfare to the end that there be no abuses or unjust discriminations or excessive charges in rendering the public service. Those engaged in a public service may properly exercise lawful and reasonable discretion in the physical control and management of property used in performing the service and in the conduct of the business, and so long as the discretion is exercised in accordance with law, in good faith and with proper regard for the public welfare it should not be interfered with, though such discretion is at all times subject to governmental supervision and regulation within legal limitations to prevent its being exercised so as to result in

abuses or unjust discriminations or other illegalities in rendering the public service. Lawful regulation in the interest of the public welfare, not arbitrary control, is the extent of the governmental authority. While the authority to regulate extends to all the means used in rendering the service, such authority should be confined to lawful regulation; and arbitrary control or management should not be attempted or permitted under the guise of regulation and supervision.

The defense presented by the return of the respondent is not that the enforcement of the order of the railroad commissioners will cause a particular loss or burden to respondent that will only prevent it from realizing a profit or will reduce its profits upon its business as an entirety; but it is in effect averred in the return and admitted by the demurrer that the enforcement of the order will greatly inconvenience many patrons to serve only a few, will seriously affect injuriously the greater part of respondent's service to the general public, will require respondent to assume undue risks or unreasonable burdens, which risks will operate to the disadvantage of the great mass of respondent's patrons for the benefit of only a few, and will cause unreasonable loss and risks to respondent beyond its duty to the public, by increasing the annual loss sustained in the operation of the road as an entirety, and consequently that the order is unreasonable and unlawful.

The enforcement of an unreasonable and unlawful regulation is in effect a taking of property without due process of law and a denial of the equal protection of the laws.

In rendering the public service the respondent and its property rights are subject to reasonable and lawful supervision and regulation and to the burden incident thereto; but the respondent and its property are not subject to unjust or unreasonable orders or regulations

the enforcement of which will not be for the general welfare, but will violate the constitutional provisions designed for the protection of all property rights whether used in the public service or not.

The demurrer to the return is overruled with leave to present issues of fact within two weeks.

All concur.

Petition for rehearing in this case denied.