THE STATE OF FLORIDA, *ex rel* RAILROAD COMMISSIONERS, *Relators, v.* FLORIDA EAST COAST RAILWAY COMPANY, *Respondent.*

1. Until the contrary appears, it will be presumed that in making an order or regulation, the Railroad Commissioners acted not arbitrarily, but upon full hearing or after giving all interested parties a reasonable opportunity to be heard, and upon appropriate evidence duly considered and properly applied.

2. The prima facie effect of an order made by the Railroad Commissioners may be overcome by admissions in pleadings that clearly show the invalidity of the order, or admit that the order is unreasonable, and was arbitrarily made without evidence or due consideration.

3. Where regulations of the Railroad Commissioners are not necessarily proper as a matter of law, or where the propriety of the regulation may depend upon circumstances, there should be an investigation of the pertinent circumstances before the regulations are made.

4. A demurrer to the return to an alternative writ of mandamus admits as true all well-pleaded averments of fact and all fair and pertinent inferences or conclusions of fact in the return that are not inconsistent with, or repugnant to, accompanying specific detailed averments of facts and circumstances, but it does not admit conclusions of law stated in the return.

5. The mere fact that the Railroad Commissioners cites the carrier to a hearing as to the reasonableness of the charges being made by the carrier, does not establish the unreasonableness of the charges being made by the carrier, or that the charges unjustly discriminate.

6. When a return to an alternative writ of mandamus brought to enforce an order of the Railroad Commissioners directly

and specifically avers in effect that the order was made arbitrarily and without any evidence to support it, and that the order is illegal and unjust for stated reasons, and that because thereof it deprives the carrier of specified constitutional rights, and the other averments of the return do not negative the ultimate facts and conclusions so stated, the return is sufficient to raise a material issue for the introduction of any pertinent testimony.

7. Before making an order within its authority, the Railroad Commissioners should carefully and duly enquire into and consider the interests of all those who are directly and substantially affected by the order; and appropriate evidence of facts and circumstances should be obtained and considered when the subject of the order requires investigation in the interest of private rights and the public welfare.

8. The statute does not forbid discriminating charges by common carriers, but it does forbid charges that unjustly discriminate, as well as charges that are unreasonable and unjust.

9. While an unjust discrimination will not be permitted so as to make a service rendered by a common carrier remunerative, yet in determining whether a charge or a regulation is unjustly discriminating, the rights of the carrier are to be considered, together with other facts and circumstances affecting the subject.

10. Where a return to an alternative writ of mandamus specifically avers that the order of the Railroad Commissioners sought to be enforced was made arbitrarily and without any evidence to support it, and avers facts tending to show that the order is unreasonable and will deprive the carrier of constitutional rights, and these averments are not negatived by other averments, a demurrer to the return will be overruled.

This is a case of Original Jurisdiction.

STATEMENT.

The following alternative writ of mandamus was issued herein:

"Whereas by a petition filed by our Railroad Commissioners in our Supreme Court in the name of The State of Florida, through Louis C. Massey as Special Counsel for our said Railroad Commissioners designated by them, it has been made to appear:

1.   That the Florida East Coast Railway Company is a railroad company chartered in the year 1892, under the general laws of the State for the incorporation of railroad companies, which on December 25th, 1902, and prior thereto owned and operated a main line of railroad wholly within this State, beginning at the City of Jacksonville and extending generally thence south and along the East Coast of Florida, through the City of St. Augustine and through the towns of New Smyrna and Titusville to the City of Miami in the County of Dade, a distance of about three hundred and sixty-six miles with several small branch lines all lying wholly within this State.   That in or about the year 1904 the said railway company extended its main line of railroad from Miami, aforesaid, to Homestead, in the County of Dade, a distance of about twenty-eight miles, and thereafter, and recently has constructed and now operates an extension of its said main line from Homestead aforesaid but still wholly within this State along and over the Florida Keys and waters to the City of Key West, making a main line of railroad from Jacksonville to Key West of about five hundred and twenty-two miles in length, which the said company now operates together with the branch lines aforesaid.

2.   That on or about December 25th, 1902, the said

Florida East Coast Railway Company, without any statutory requirement, or any order from the Railroad Commissioners reduced its rate of passenger fare and put into effect a passenger rate of three cents per mile with the exceptions hereinafter set forth and announced that the three cent rate had been.adopted and such rate has been continued in force and has been charged by said railroad until the present time and is now charged by it for the transportation of passengers over its line between points in this State, from Homestead North.

3.  That in the year 1904 the said railroad company being about.to construct the extension aforesaid from Homestead south, was allowed by the Railroad Commissioners to charge a passenger rate of four cents per mile over the said extension which was necessarily to be costly construction over the Florida Keys and over the waters between them.

4.  That afterwards the said Railroad Commissioners learned upon investigation that the Florida East Coast Railway Company was not charging a straight three cent per mile rate of passenger fare on the remainder of its line but charged between Jacksonville and St. Augustine an excess sum of fifteen cents for the alleged reason of keeping up the draw bridge over the St. Johns River at Jacksonville on the main line, also another excess of twenty cents or thereabouts between Palatka and points South thereof each way for the alleged reason that it was to protect its through rate between Jacksonville and points South of Palatka, the Atlantic Coast Line Railroad having the shorter line by nine miles from Jacksonville to Palatka; and also another excess of twenty-five cents for passage over the bridge on the spur track at Ormond across the Halifax River and for passage over the bridge on the spur track across Lake Worth between

West Palm Beach and Palm Beach for passengers destined to and leaving from the eastern sides of the Halifax River and of Lake Worth, respectively; and the said Railroad Commissioners after due notice to the said company and hearing, entered their Order No. 101, dated June 13th, 1906, wherein they did order and prescribe that from and after July 1, 1906, the full rate to be charged by the said Florida East Coast Railway Company for the transportation of passengers over its line North of Homestead should be three cents per mile and the half rate should be one and one-half cents per mile for each passenger and that children under five years of age, when traveling with parents or guardians should be carried free and those between the ages of five and twelve should be charged half fare.

5. That after the entry of the last named order the Colonial Trust Company, Trustee, under two certain mortgages executed by the Florida East Coast Railway Company of that part of its line which is North of Miami, filed its bill in chancery in the Circuit Court of the United States for the Northern District of Florida to restrain the said railway company from obeying and the Railroad Commissioners from enforcing the said order, on which said bill a special injunction was granted and the cause proceeded to testimony before an examiner, but having become abated by change of conditions, has lately been dismissed without prejudice by consent of parties. That after the dismissal of the said bill and the consequent dissolution of the special injunction your petitioners, as the Railroad Commissioners of the State of Florida, did on March 16, 1912, open up and set aside the former Order No. 101 dated June 13, 1906, for further proceedings and gave due notice thereof to the said rail-

way company and also of a meeting at which your petitioners would hear and consider what, if any, passenger rates they should prescribe on its line of railway North of Homestead and after such notice and after a full opportunity to the said railway company to be heard, your petitioners on May 14, 1912, made the following Order No. 357 of which the said railway company had due notice:

                    "ORDER No. 357.

BEFORE THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA.—IN THE MATTER OF PRESCRIBING RATES OF PASSENGER FARE ON THAT PART OF THE FLORIDA EAST COAST RAILWAY WHICH IS NORTH OF HOMESTEAD, FLORIDA.

Whereas, The Florida East Coast Railway Company, operating a line of railroad wholly within this State, on or about December 25, 1902, reduced its rate of passenger fare and put into effect a passenger rate of three cents per mile with the exceptions hereinafter set forth, and announced that the three cent rate had been adopted.

Whereas by our Order No. 62 entered on November 2, 1904, we authorized the said railway company to charge four cents per mile for the transportation of passengers from its Southern Terminus at Homestead South over an extension which it was contemplating to Key West, which extension was necessarily to be of costly construction.

And whereas in the years 1904, 1905 and 1906 we ascertained that the said railway company was charging North of Homestead certain arbitraries different from the said rate of three cents per mile; that is to say, an excess sum of fifteen cents between Jacksonville and St. Augustine

for the alleged reason of keeping up the draw bridge over the St. Johns River at Jacksonville on the main line; also an excess of twenty cents or thereabouts between Palatka and points South thereof, each way, for the alleged reason that it was necessary to protect its through rate between Jacksonville and points South of Palatka, the Atlantic Coast Line Railroad Company having the shorter line from Jacksonville to Palatka; and also an excess sum of twenty-five cents for passengers over the bridge on the spur track at Ormond across the Halifax River and for passengers over the bridge on the spur track across Lake Worth between West Palm Beach and Palm Beach for passengers destined to and leaving from the eastern side of the Halifax River and of Lake Worth respectively.

And whereas after due notice to the said railway company and hearing, we by our certain Order No. 101, dated June 13, 1906, did order and prescribe that the full rate to be charged by the said Florida East Coast Railway for the transportation of passengers over its line North of Homestead, Florida, should be three cents per mile, and the half rate should be one and one-half cents per mile for each passenger; and that children under five years of age, when traveling with parents or guardians should be carried free, and those between the ages of five and twelve should be charged half fare, said rates to become effective from and after July 1, 1906.

And whereas shortly after the making of the said Order No. 101, the Colonial Trust Company, Trustee, under two certain mortgages executed by the said Florida East Coast Railway Company on the said line of road or a portion thereof, filed its bill in chancery in the Circuit Court of the United States for the Southern District of Florida to restrain the said railway company from obeying the said order, and the Railroad Commissioners of this State from

enforcing it, on which bill a special injunction was granted, and the cause proceeded to testimony, but having been abated by change of conditions, has lately been dismissed without prejudice by consent of parties.

And whereas after the dismissal of the said cause, we by our Order No. 354 dated March 16, 1912, opened up and set aside our said Order No. 101 for further proceedings before us, and on the same day notified the said railway company that the same had been so opened up and set aside and that we should on April 10, 1912, hold a meeting to hear and consider what, if any, passenger rates we should prescribe on its line of railway in the State North of Homestead, Florida, and did afterwards on April 3, 1912, notify the said railway company that the said hearing would be postponed until May 10, 1912, at 10 o'clock a. m. in the City of Tallahassee, and the said railway company having filed with us a sworn statement and not appearing by any of its officials or by its counsel, but having had full opportunity to be heard, and we now being fully advised in the premises,

Now therefore we, the Railroad Commissioners of the State of Florida, do find that said arbitrary rates between Jacksonville and St. Augustine and between Palatka and points South ought to be abolished, and do find that the rate of three cents per mile for full passenger fare and one and one-half cents per mile for half fare is a just and reasonable rate of passenger fare on the said line of railway North of Homestead, except as hereinafter allowed and is moreover all that the service is worth. And we do order that from and after June 1st, 1912, that the full rate to be charged by the Florida East Coast Railway Company for the transportation of passengers over its line North of Homestead, Florida, shall be three cents per mile and the half rate shall be one and one-half cents

per mile for each passenger, and that children under the age of five years of age when traveling with parents or guardians shall be carried free and those between the ages of five and twelve shall be charged half fare. Provided that for passengers destined to or leaving from the eastern side of the Halifax River at Ormond or destined to or leaving from Palm Beach on the eastern side of Lake Worth an additional sum of twenty-five cents each may be charged for full fare and fifteen cents for half fare for the special service of transportation over the bridges at those stations respectively.

Ordered in open session of our Board at our office in the City of Tallahassee, this 14th day of May, A. D. 1912.

(Signed)          R. HUDSON BURR, Chairman.

6. That the Florida East Coast Railway Company violates and disregards the requirements of the said Order No. 357, and refuses to obey the same, but continues to charge the said arbitrary or excess rates which are prohibited therein.

7. That your petitioners as the Railroad Commissioners of the State of Florida and the people of this State are entirely without adequate remedy in the premises unless it be afforded them by the interposition of this Honorable Court through a writ of mandamus. Now therefore we being willing that full and speedy justice be done in the premises, do command you, the Florida East Coast Railway Company, forthwith to observe and obey in all respects and in all particulars the said Order No. 357 made by our said Railroad Commissioners on May 14, 1912, and forthwith to charge only passenger rates on your line North of Homestead in this State which do not exceed those prescribed therein; or that you appear before the Justices of our Supreme Court sitting within and for-

The State of Florida at the Court Room in the City of Tallahassee, on the 19th day of June, A. D. 1912, at 10 o'clock a. m. of that day, and show cause why you refuse so to do; and have you then and there this writ.

Witness the Honorable James B. Whitfield, Chief Justice of the Supreme Court of the State of Florida and the seal of the said Court at Tallahassee, the Capital, the 4th day of June, A. D. 1912.

M. H. MABRY, .

(Seal)      Clerk Supreme Court, State of Florida."

The following return to the writ was filed:

"And now comes the respondent, the Florida East Coast Railway Company, by Alex. St. Clair-Abrams, its Attorney and Solicitor, and for a return to the alternative writ of mandamus herein issued says:

1. The respondent admits that the facts set forth in the first paragraph of the alternative writ are substantially correct.

2. The respondent admits, as set forth in the second paragraph of the alternative writ, that on or about December 25, 1902, this respondent voluntarily and without any statutory requirement or order from the State Railroad Commissioners, reduced its rate of passenger fare to 3c per mile from 4c but left unchanged the additional charge it had always made of 15c across the bridge spanning the St. Johns River at Jacksonville and 20c across the bridge at Palatka, and made no change in regard to that.

3. The respondent admits that it is true, as set forth in the third paragraph of the alternative writ, that in the year 1904 the State Railroad Commissioners authorized this respondent to charge 4c per mile for passenger fare over the extension of the road from Homestead to Key

West; but this respondent says that it never applied to the State Railroad Commissioners for any permission to charge 4c per mile, as set forth in the alternative writ and in the order of the Commissioners made in 1904. This respondent says that, having begun the construction of the extension from Miami to Key West and having completed so much of it as extended from Miami to Homestead and being ready to put into regular operation as part of its main line said extension from Miami to Homestead, this respondent, in October, 1904, applied to the State Railroad Commissioners for permission to charge 4c per mile passenger fare on its main line South of Miami; that, in November, 1904, the State Railroad Commissioners, ignoring the plain language of the application, made an order incorrectly declaring that this respondent had made an application for permission to charge 4c per mile on the extension from Homestead, when, in truth and in fact, this respondent had never made any such application. At the time of the application not one mile of road South of Homestead had been graded or constructed and no part of the extension of the main line from Homestead was ever put into operation until the year 1908.

4. And for a further return, to the alternative writ this respondent says it is true, as set forth in the 4th paragraph of the alternative writ, that this respondent has been charging and still charges an excess sum of 15c per passenger over the drawbridge and trestle over the St. Johns River at Jacksonville and also an excess charge of 20c or thereabouts, over the drawbridge and trestles across the St. Johns River at Palatka each way, but not, as alleged in said alternative writ, solely to protect the through rate of this respondent between Jacksonville and points South of Palatka, the Atlantic Coast Line Rail-

road having the shorter line from Jacksonville to Palatka.

This respondent says that when it charged 4c per mile passenger fare it also charged the excess of 15c over the drawbridge and trestle at Jacksonville and also charged an excess of 20c or thereabouts, over the drawbridge and trestle at Palatka; that the drawbridge and trestle at Jacksonville were owned by an entirely separate and independent corporation which was merged into the Florida East Coast Railway; that this drawbridge and trestle originally cost in the neighborhood of $350,000; that since then many thousands of dollars have been expended on it in betterments and improvements; that, owing to Jacksonville being the principal port of Florida, vessels are continually passing through the draw; that this respondent is compelled to employ numbers of men in guarding that drawbridge and trestle and in opening and closing the draw to admit the passage of vessels; that said drawbridge and trestle have to be watched and guarded night and day, thereby imposing upon this respondent large additional expenses beyond the ordinary expenditures on any part of its line except over the drawbridge and trestle at Palatka. This respondent says that the drawbridge and trestle at Palatka require the same heavy expense in the employment of numbers of men to watch and guard said drawbridge and trestle night and day, although there are not so many vessels passing through the draw there.

This respondent further says that the drawbridge and trestle at Palatka form part of a short spur or branch from its main line at East Palatka of less than six miles in length; that, in addition to protecting its main line, as set forth in the alternative writ, this short spur or branch is and always has been operated at an annual loss to this respondent; that this respondent acquired it when it

purchased the short lines of road running from St. Augustine to Palatka and from Daytona to Palatka; that but for the fact of its having acquired this drawbridge and spur, as stated, it would never have constructed the same; that it is compelled to operate separate and distinct trains over this short spur or branch; that but little freight and comparatively few passengers pass over said branch or spur, although this respondent is compelled to operate trains connecting with all of its regular trains on the main line, involving a large annual loss and expense to this respondent.

And the respondent further says that its bridge at Jacksonville is assessed and taxed separately, by the City of Jacksonville, and by the State of Florida, and County of Duval, from the balance of its line and that this respondent pays a separate tax on said bridge in addition to the tax assessed on and paid by it on a mileage basis.

5. And for a further return to the alternative writ this respondent says that when it reduced its rate on passengers from 4c to 3c per mile it did not abolish the additional rate over the bridges and trestles, but continued to maintain the same and that the Florida Railroad Commissioners knew, or could with reasonable care and diligence have known, that it had made no change whatsoever in the rates over said bridges and trestles.

6. And for a further return to the alternative writ this respondent says that the matters and things set forth in the fifth paragraph of the alternative writ are substantially true; that the said Railroad Commissioners did issue and serve upon this respondent Order No. 354; but that the said alternative writ fails to recite and set forth the answer filed by this respondent to said Order, a copy of which said answer is annexed hereto, marked

VOL. 64, JUNE TERM, 1912.  125

State *ex rel.* R. R. Com. v. F. E. C. Ry.—Statement of Case.

'Exhibit 1' which this respondent prays may be taken as part of this return.

7.  And for a further return to the alternative writ this respondent says that it is informed and believes and so charges that but one person has ever complained to the State Railroad Commission of the special rate charged over said bridge; that the traveling public pay said special rates without complaint and without dissatisfaction; that the original Order No. 101, set forth in the alternative writ, was made upon the complaint of a single complainant, but that the public generally has never complained or expressed any dissatisfaction because of the imposition of said special rate.

8.  And for a further return to the alternative writ this respondent says that in making the order of the 14th, day of May 1912, the said State Railroad Commissioners utterly failed and refused to consider the condition of this respondent's road and business, as they were and are required by law to do; that, in addition to the answer herein annexed marked 'Exhibit 1' this respondent requested permission to put in evidence to sustain the allegations of the answer, but the said State Railroad Commissioners utterly failed and refused to accept this offer or to give this respondent an opportunity, by testimony, to show the condition of its road and to prove the matters and things alleged in said answer, but, arbitrarily and without any evidence, issued the order dated May 14, 1912.

9.  And for a further return to the alternative writ this respondent says that for the fiscal year ending June 30, 1911, its average rate per mile for passengers was less than 2½c per mile, being only $.02427; that, by reason of its selling 1,000 mile tickets at 2½c per mile and by reason of excursions at rates much below 3c per mile

and by reason of the low rate it is compelled to charge on its branch from Jacksonville to Mayport, it does not average anything near 3c per mile; This respondent, by reason of the great mass of its passenger business being in the winter or tourist months, is compelled to have a large passenger equipment, the greatest part of which is idle during six or seven months in the year, imposing upon this respondent a special and additional expense in the care, maintenance and guarding of the same.

10. And for a further return to the alternative writ this respondent says that its entire business does not warrant its fixing the passenger rates at straight 3c per mile; that, while its business has increased, its expenditures have increased to a greater extent; that, owing to the great fluctuations in the production of fruits and vegetables on its line of road and branches, it is subject to heavy decreases in its receipts from this source; that it carries but little dead freight on its line of road; that the matters and things set forth in 'Exhibit 1' forming part of this return show the true condition of the road; that since said answer was filed the earnings from vegetables show a still greater loss to this respondent than appeared likely when the answer was filed.

11. And for a further return to the alternative writ this respondent says that in its order of the 14th, of May 1912, the State Railroad Commissioners refused to consider the entire business and condition of this respondent's road, as required by the law of the State; that it refused to recognize the right of this respondent to earn a reasonable profit on the investment and value of the entire property; that it assumed to ignore the extension of the main line from Miami to Key West as an integral part of this respondent's line of road, although the entire extension from Miami to Knights Key during the fiscal

year ending June 30, 1911, contributed more than $500,-000 to the business of the main line from Jacksonville to Miami, as this respondent is prepared to show; that this respondent has invested nearly $35,000,000 in the construction of its line of railroad from Jacksonville to Key West with its branches, and that the present value of the entire line is not less than $40,000,000; that the construction of the extension from Miami to Key West was not only authorized by the laws of the State of Florida, but was specially declared desirable by the State of Florida by the Act of the Legislature of 1905; that the entire net earnings of this respondent's line of road during the fiscal year ending June 30, 1911, were only $1,270,000, or less than 4% on the actual investment, and only $70,000 more than 3% on the present value of the property.

12. And for a further return to the alternative writ this respondent says that the order of the Commissioners of May 14, 1912, was made without one word of evidence before the Commissioners tending to show that the charges over the bridges at Jacksonville and Palatka were unjust or unreasonable; that said order was issued upon the complaint of a single person made more than six years ago; that, if said Order is affirmed by this Court, it will involve this respondent in an annual loss of not less than $10,154.70, and will further impair the ability of this respondent to earn its fixed charges; that the rate of interest on its first mortgage bonds is only 4½%; that the rate of interest fixed by the Board of Directors on the second mortgage bonds is only 4%.

Respondent further says that the value of money and rate of interest in the State of Florida is fixed at 8%; that the prevailing rate of discount by the banks in Florida is 8%; that money cannot be borrowed in the State

of Florida, save in exceptional cases, at a less rate than from 6% to 8%; that the rate of interest fixed on the bonds of the Florida East Coast Railway is much lower than the prevailing rates of interest in the State of Florida and is as low as, or lower than, the average rate of interest in any part of the United States.

This respondent. further says that its first mortgage bonds were sold at 96 cents on the dollar; that its second mortgage bonds were sold at par; that it is confronted this year with a probable deficit by reason of inability to earn as much as 4% on its second mortgage bonds; that, although its common stock was sold and purchased at par, it has never been able to earn any dividend on it.

13.   And for a further return to the alternative writ this respondent says that after the abatement of the case of the Colonial Trust Company (Afterwards the Trust Company of America) v. Florida Railroad Commissioners et al., the Florida Railroad Commissioners rescinded their order of 1906, and, without any other or further complaint, instituted the present proceedings against this respondent of its own volition and without any evidence whatever showing or tending to show that the special rate charged is unjust or unreasonable or is in any way exacting or oppressive to the traveling public, made said order.

14.   And for a further return to the alternative writ this respondent says that, the premises considered, the order of the State Railroad Commission is unjust and unreasonable and tends to inflict irreparable injury on this respondent and tends to deprive it of just compensation for services rendered, as required by the Constitution of the State of Florida and the Constitution of the United States; that it is further unjust and unreasonable in that it deprives this respondent of the equal pro-

tection of the laws and deprives this respondent of due process of law and tends directly to take the property of this respondent without due compensation and without due process of law and in violation of the Constitutional rights of this respondent.

· The premises considered, this respondent, having fully answered and made return to the said alternative writ of mandamus, prays that said writ be dismissed at the cost of relators.

J. R. PARROTT,

President of Florida East Coast Railway Company.

Alex. St. Clair-Abrams, Attorney and Solicitor for Florida East Coast Railway Company.

'EXHIBIT 1.'

| In the matter of the passenger rates on Florida East Coast Railway Company, North of Homestead, Florida. | Before the Railroad Commissioners of the State of Florida. |
|---|---|

Order No. 354.

And now comes the Florida East Coast Railway Company, by Alex St. Clair-Abrams, its Solicitor, and for answer to the citation says:

That the situation and condition of the Florida East Coast Railway existing on June 13, 1906, which led to the suit in chancery brought against the Railroad Commissioners of Florida is not materially different, as follows:

1. That the Florida East Coast Railway Company pays no dividends whatsoever on its stock and pays only

4½% interest on $11,000,000 of its first mortgage bonds and only 4% interest on $20,000,000 of its second mortgage bonds.

2.   That the average of the Florida East Coast Railway Company per mile for passenger traffic is less than three cents per mile.  By reason of selling large numbers of thousand mile tickets at 2½c per mile; by reason of a half rate for children between the ages of 5 and 12 years, or only 1½c per mile, and by reason of the rates on the Mayport division being less than 2c per mile, the average rate received by the Florida East Coast Railway Company, for passengers is less than 2½c per mile, as the Florida East Coast Railway Company is prepared to show.

This respondent further says that, although the business of the Florida East Coast Railway Company has increased since 1906, its expenditures have also largely increased; that during the years 1910 and 1911 and beginning on the first of January, 1912, it was compelled to further increase the salaries of all of its employees; that for the eight months beginning the first of July 1911, to the 29th, day of February, 1912, while its freight and passenger business increased, $257,057.55, its expenditures for the same eight months increased $303,662.82; that during the months of January and February, 1912, its freight business decreased largely over the same months in 1911; that there has been a still further decrease in its earnings from freight during the month of March, which will further decrease its earnings so that it will not be able to pay 4% on its second mortgage bonds for the fiscal year ending June 30, 1912, unless there is a large and unlooked for increase in its business during the next three months.

This respondent further says that it is not in condi-

tion to put a flat rate of 3c per mile for its passenger rate for the following reasons:

1. That it has a large annual expense to keep up and maintain its drawbridge and trestle across the St. Johns River in Jacksonville requiring the presence of men to watch and guard it and requiring constant supervision, inspection and repair; that it has also a drawbridge and trestle to maintain and keep across the St. Johns River at Palatka, which require a large annual expenditure to keep and maintain and which also require the employment of men to watch and guard said drawbridge.

2. This respondent also sets forth that it also has two bridges to keep and maintain; one across the Halifax river at Ormond and another across Lake Worth at Palm Beach; that prior to the construction of these bridges passengers for the East side of the river at Ormond during the winter season and for the East side of Lake Worth during the same season had to employ launches and other craft to cross the river and had to pay from 25c to 50c each for crossing; that, in addition, these passengers were required to pay an additional charge of from 25c to 50c for each trunk conveyed across the Halifax river or across Lake Worth; that these expenditures and the delay incident in crossing the river and lake, as well as the exactions of those owning boats and launches, caused great complaint and discomfort to passengers and threatened great injury to the winter traffic in the State and tended directly to impair the development of the State; that nearly all of these passengers had either winter homes on the East side of the river or lake or were tourists, visiting the hotels there; that in order to prevent the exactions and to terminate the inconvenience and to prevent the injury to the State, this

respondent caused to be constructed the drawbridges and trestles across the Halifax river and Lake Worth and charged each passenger 25c, including the baggage of the passenger, thereby saving large sums of money to the passengers and promoting their comfort and convenience and materially aiding in the welfare, prosperity and development of the State; that, in order to maintain these trestles and drawbridges in good condition, this respondent has to employ men to guard and watch said bridges and to keep the same in constant and steady repair; that this affiant's trains are not operated over the bridges across the Halifax river and Lake Worth except during the winter season; after which all trains are withdrawn therefrom; that this respondent to defray the extra expenses imposed upon it for the care and maintenance of said bridges and trestles charges a small sum over and above 3c per mile; that in many cases passengers travel on thousand mile tickets costing only 2½c and the entire cost to such passengers is less than an average of 3c a mile, including the sum of from 15c to 25c extra charged for crossing over said bridges and trestles.

3.  And this respondent further says that, in view of its increased expenditures and the fact that it pays no dividends whatever on its stock and but a very low rate of interest on its bonds, and in further view of the fact that its necessary increase in expenditures more than exceeds its aggregate increase of business, it is not in condition to make any further reductions in passenger rates at this time or to put in force a flat passenger rate of 3c per mile.

This respondent respectfully submits that the State Railroad Commission having by its order No. 354 set aside Order No. 101, this Commission is without author-

ity of law to institute new or other proceedings in regard to said matter in the absence of any other or further complaint, and respectfully submits that there never has been but a single complaint from a single passenger before it; that all but this single passenger have cheerfully paid the small sum in excess for travel over said bridges and trestles; that the charge for the same is reasonable and does not more than pay the aggregate extra expense incurred by this respondent for the care, watching, maintenance and repair and up-keep of said drawbridges and trestles, and that it is not reasonable to require this respondent to maintain a flat rate of 3c per mile over said drawbridges and trestles.

This respondent further respectfully sets forth that if it be so that the State Railroad Commission could require this respondent to maintain said flat rate of 3c per mile for passenger rates, this respondent would be compelled to abandon selling thousand mile tickets at 2½c per mile or carrying children for half rates.

And the respondent further says that since the fiscal year ending June 30th, 1911, it has been compelled to largely increase its expenses by increasing the wages and salaries of practically every one of its employees, and that it was compelled to make this increase in view of the increased cost of living and to prevent a strike on its road and the suspension of its business during the busiest season of the year; that since the filing of the original return it has been able to ascertain the net earnings for the fiscal year ending June 30th, 1912; that owing to the large increase in its expenses and to a great loss of revenue from fruits and vegetables its net earnings for the fiscal year ending June 30th, 1912, will barely exceed $1,000,000.00; that after paying 4½% on the first mortgage bonds its earnings will not pay exceed-

ing 2½% on the $20,000,000.00 of outstanding second mortgage bonds; that the rate of interest on the second mortgage bonds having been fixed by the Board of Directors at 4%, there will be a deficiency of $300,000.00 and that the entire net earnings of the company for the fiscal year ending June 30th, 1912, will not pay 3% on its actual investment or upon the present value of its property. And this respondent says that it is unjust and unreasonable for the State Railroad Commission to further reduce the revenues of this respondent in view of the condition of the road, the investment made by the company, the value of its property, and its earnings.

The premises considered this respondent respectfully submits that no other or further order in regard to the rates for passengers over the line of this respondent's road North of Homestead, Florida, should be made by this Commission.

Respectfully submitted,

(Signed)   ALEX. ST. CLAIR-ABRAMS,<br>Solicitor for Respondent."

To the return the following demurrer was filed:

"The relators by Louis C. Massey, their Special Counsel, say that the return of the Florida East Coast Railway Company, respondent, to the alternative writ of mandamus is bad in substance and for causes of demurrer show to the court here:

1. That nothing appears in and by the said return to justify the discrimination against persons and localities caused by charging the excess sum of fifteen cents on passenger fares between Jacksonville and St. Augustine.

2. That nothing appears in and by said return to justify the discrimination against persons and localities

caused by charging the excess sum of twenty cents on passenger fares between Palatka and points South.

3. That the jurisdiction of the Railroad Commissioners to prescribe rates or to remove discriminations in rates is not dependent upon complaint being made to them, as it is made their duty by law to prescribe rates and to remove discriminations of their own motion.

4. That nothing appears in and by the said return to show that the respondent did not have an opportunity for a fair and just hearing before the order sought to be enforced in the proceeding was made, or that the action of the relators in making it was arbitrary and without evidence.

5. That nothing appears in and by the said return to show that the order of the relators is unjust and unreasonable and will deprive the respondent of the equal protection of the laws or will take its property without due process of law.

LOUIS C. MASSEY,
Counsel for Relators."

*Louis C. Massey,* Counsel for Relators.

*Alex St. Clair-Abrams,* Counsel for Respondents.

WHITFIELD, C. J.—(*after stating the facts.*)

The real purpose of this proceeding is to enforce order No. 357 of the Railroad Commissioners dated May 14th, 1912, requiring the carrier in effect to cease making what may be termed a specific charge of fifteen cents in addition to the regular mileage charge between Jacksonville and St. Augustine for each passenger transported over the respondent's railroad bridge at Jacksonville, Florida, and of about twenty cents additional between Palatka

and points south for each passenger transported over the respondent's railroad bridge at Palatka, Florida, the bridge being a portion of respondent's railroad lines. It does not affirmatively appear from the pleadings that the same charges are not made for passengers carried over the bridge between Jacksonville and other points than St. Augustine, or for passengers carried over the bridge between Palatka and points north. All trains going south to or from Jacksonville over respondent's road pass over the Jacksonville bridge and all trains over respondent's road going north or south to and from Palatka pass over the Palatka bridge.

Valid orders of the Railroad Commissioners should be made effective to accomplish the public purpose contemplated by law. The Commissioners have authority to make just and reasonable rates, rules and regulations to prevent *unjust* discriminations in charges for the transportation of intra-state passengers by railroads in this State, and such orders when duly made are by statute deemed to be *prima facie* reasonable and just. Until the contrary appears, it will be presumed that in making an order or regulation, the Railroad Commissioners acted not arbitrarily, but upon full hearing or after giving all interested parties a reasonable opportunity to be heard, and upon appropriate evidence duly considered and properly applied. But an arbitrary and unreasonable rate, rule or regulation is not within the authority of the Railroad Commissioners to make. See State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639. While an unjust discrimination will not be permitted so as to make a service rendered by a common carrier remunerative, yet in determining whether a charge or a regulation is unjustly discriminating, the rights of the carrier are to be considered.

together with other facts and circumstances affecting the subject.

An order made arbitrarily and without due consideration of the rights affected thereby may be illegal. The *prima facie* effect of an order made by the Railroad Commissioners may be overcome by admissions in pleadings that clearly show the invalidity of the order, or admit that the order is unreasonable, and was arbitrarily made without evidence or due consideration.

Where it appears from the admissions of the pleadings that a regulation prescribed by the Railroad Commissioners is not authorized by law or is unreasonable or unjust with reference to all the substantial interests directly effected by it, such regulation will not be enforced by the courts. State ex rel. Ellis v. Atlantic Coast Line R. Co., 51 Fla. 578, 41 South. Rep. 705; State ex rel. Morgan v. Louisville & N. R. Co., 51 Fla. 311, 40 South. Rep. 885; State ex rel. Railroad Com'rs. v. Florida East Coast R. Co., 58 Fla. 524, 50 South. Rep. 425; State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 57 Fla. 526, 49 South. Rep. 39; State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175.

In the absence of a rate duly fixed by the Commission, there is no presumption that the rate charged by the carrier is excessive or unjustly discriminating. The statutory presumption that a rate fixed by the Commission is reasonable and just, exists only when the Commission acts within its authority and in due course of law. If the Commission makes a rate, rule or regulation without statutory authority, or without giving the carrier affected by it a reasonable opportunity to be heard, or without obtaining or considering any substantial and pertinent evidence, where investigation, inquiry and evidence

are necessary as a basis for the action taken, the proceeding is not had in due course of law and there is no statutory presumption that the action taken is reasonable and just.

If it is admitted by pleadings or proven by evidence that the Commission has arbitrarily made a rate, rule or regulation without giving the carrier affected by it a reasonable opportunity to be heard upon the subject before action taken, or without any substantial and relevant evidence, or pertinent inquiry, investigation or consideration of matters, conditions, facts, and circumstances directly and materially affecting its reasonableness, such rate, rule or regulation is not duly made and there is no presumption that it is reasonable and just there being no question of emergency or public necessity sufficient to sustain the action taken as matter of law.

Where no presumption exists as to the reasonableness of a rate, rule or regulation prescribed by the Commission arising from action duly taken to meet an emergency or public right or necessity or a requirement of law, or taken after giving reasonable opportunity for an adversary hearing and due consideration of pertinent matters, as a basis for the action taken, the rate, rule or regulation will not in general be enforced by the courts at least where there is no complete showing of its reasonableness and appropriateness to justify the action taken without a deliberate hearing or investigation. If the carrier utterly fails or refuses to render a service or perform a duty specifically required by law or arbitrarily and unjustly makes charges for service under conditions that patently and necessarily unjustly discriminate between persons localities or commodities an investigation and a consideration of testimony may not in all cases be necessary in making regulations to enforce the law. But

where regulations are not necessarily proper as a matter of law, or where the propriety of the regulation may depend upon circumstances, there should be an investigation of the pertinent circumstances before the regulation is made.

In this case the charge for transportation of passengers over the railroad lines or the bridges of the carrier is not specifically fixed by law, and a particular charge or regulation prescribed by the Commission is not *necessarily* legal and proper, therefore a reasonable opportunity to be heard should be afforded the carrier and due investigation and consideration of all the conditions and circumstances affecting the rights of the carrier and the public, should be had before the regulation is made. See State of Washington *ex rel.* Oregon & Nav. Co. v. Fairchild, 224, U. S. 510, 32 Sup. Ct. Rep. 535.

A demurrer to the return to an alternative writ of mandamus admits as true all well-pleaded averments of fact and all fair and pertinent inferences or conclusions of fact in the return that are not inconsistent with, or repugnant to, accompanying specific detailed averments of facts and circumstances, but it does not admit conclusions of law stated in the return. State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; Int. Com. Com. v. U. P. R. Co., 222 U. S. 541.

The demurrer specifies that nothing appears in the return to justify a discrimination in charges or to show that the action of the Railroad Commissioners in making the order was arbitrary and without evidence, or to show that the order is unjust and unreasonable and will deprive the carrier of property without due process of law or will deny the carrier the equal protection of the laws.

This demurrer is framed upon the theory that an unjust discrimination by the carrier was duly found and

established by the Commissioners and that the order as made is *prima facie* reasonable and just, thus putting the burden upon the carrier.

But the return avers in effect that the order was made without any evidence whatever to support it and sets up facts purporting to show that the order is unjust to the carrier, and these specific averments of facts are admitted by the demurrer. This being so, the order was not made in due course of law and is not *prima facie* reasonable and just.

The mere fact that the Railroad Commissioners cited the carrier to a hearing as to the reasonableness of the charges being made by the carrier, does not establish the unreasonableness of the charges being made by the carrier, or that the charges *unjustly* discriminate, even though, there appears to be a discrimination; and as the demurrer in effect admits that the order here complained of was made without any evidence to support it, the want of evidence before the Commissioners cannot be "supplied on judicial review by a presumption arising from the failure of the carrier to disprove what had not been established," particularly when it is in effect admitted that "there was no evidence whatever warranting a finding that there was any" injustice in the charges being made by the carrier. See State of Washington *ex rel.* Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. Rep. 535.

An opportunity was given the respondent company to be heard before the order here assailed was made, but the demurrer admits the averments of the return that the order was made without evidence to support it.

When a return to an alternative writ of mandamus brought to enforce an order of the Railroad Commission-

ers directly and specifically avers in effect that the order was made arbitrarily and without any evidence to support it, and that the order is illegal and unjust for stated reasons, and that because thereof it deprives the carrier of specified constitutional rights, and the other averments of the return do not negative the ultimate facts and conclusions so stated, the return is sufficient to raise a material issue for the introduction of any pertinent testimony. See State *ex rel.* Railroad Com'rs. v. Seaboard Air Line Ry. Co., 48 Fla., 129, 37 South. Rep. 314.

In effect the demurrer admits the specific averments of the return that "in making the order of the 14th day of May, 1912, the said State Railroad Commissioners utterly failed and refused to consider the condition of the respondent's road and business, as they were and are required by law to do; that, in addition to the answer herein annexed marked "Exhibit 1," this respondent requested permission to put in evidence to sustain the allegations of the answer, but the said State Railroad Commissioners utterly failed and refused to accept this offer or to give this respondent an opportunity, by testimony, to show the condition of its road and to prove the matters and things alleged in said answer, but, arbitrarily and without any evidence, issued the order dated May 14, 1912," and "That the order of the Commissioners of May 14, 1912, was made without one word of evidence before the Commissioners tending to show that the charges made over the bridges at Jacksonville and Palatka were unjust or unreasonable," and that "without any evidence whatever showing or tending to show that the special rate charged is unjust or unreasonable, or is in any way exacting or oppressive to the traveling public, made said order."

The demurrer also admits the averments of facts in the

return as to the unreasonableness and invalidity of the order and of the reasonableness of the charges made by the carrier.

The alternative writ alleges that the Commissioners did on March 16, 1912, open up and set aside the former order No. 101, dated June 13, 1906, for further proceedings and gave due notice thereof to the said railroad company, and also gave notice to a meeting at which the Commissioners would hear and consider what, if any, passenger rates they should prescribe on respondent's line of railway north of Homestead, and after such notice and after a full opportunity to the said Railway company to be heard, Order No. 357 was made of which the carrier had due notice, and the order states a sworn statement was filed by the respondent. The return admits that in response to the notice given to it, an answer set out as "Exhibit 1" was filed with the Commissioners. It must therefore be assumed that the Commissioners did consider said exhibit notwithstanding the averment of the return that they acted arbitrarily and without any evidence whatever in making the order complained of.

If the exhibit is the only evidence considered by the Commissioners, it did not authorize the making of the order, since it at least tends to show that the charges complained of are not *unjust* discriminations and that the carrier cannot reduce its revenues without injustice to itself.

Before making an order within its authority, the Railroad Commissioners should carefully and duly enquire into and consider the interests of all those who are directly and substantially affected by the order; and appropriate evidence of facts and circumstances should be obtained and considered when the subject of the order re-

quires investigation in the interest of private rights and the public welfare.

In view of the specific averments of the return admitted by the demurrer that in making the order sought to be enforced the Commissioners acted "arbitrarily and without any evidence," and "without one word of evidence before the Commissioners tending to show that the charges made over the bridges at Jacksonville and Palatka were unjust or unreasonable," and considering the averments of the return as to the reasonableness of the charge now made and the unreasonableness of the order, it must on the demurrer be taken as true that the Commissioners did act arbitrarily and without sufficient evidence or consideration and that the order is on this showing, unjust and illegal. The statute does not forbid discriminating charges by common carriers, but it does forbid charges that unjustly discriminate, as well as charges that are unreasonable and unjust.

While it appears from the alternative writ and the return that discriminating charges are made by the carrier, it does not clearly appear from the pleadings that the charges are *patently and necessarily unjust* discriminations; and as the demurrer admits that the action of the Commissioners was taken without evidence to support it, the order which in effect requires the carrier to cease charging additional amounts for passage over the mentioned bridges was not made in due course of law, and is not *prima facie* reasonable and just. See State *ex rel.* v. L. & N. Ry. Co., 62 Fla. 315, 57 South. Rep. 175.

The demurrer to the return is overruled with leave to the relators to take issue on the return as they may be advised. Upon issue joined testimony may be taken upon commission issued by the Clerk of this court, or before

a Justice of the Peace in accordance with the statutes of the State and the rules governing Circuit Courts in the matter of depositions; and the Clerk of this court is directed to issue commissions for the taking of such depositions as may be duly applied for by either party in accordance with such statutes and rules; or the parties by agreement may take testimony before some one authorized to administer oaths.

TAYLOR, SHACKLEFORD and HOCKER, J. J., concur.

COCKRELL, J., dissents.