THE STATE OF FLORIDA, ex rel., RAILROAD COMMISSIONERS, Relators, v. THE FLORIDA EAST COAST RAILWAY COMPANY, Respondent.

## Opinion Filed February 3, 1914.

1. Orders duly made by the railroad commissioners within their statutory authority to regulate the maintenance and operation of railroads as common carriers, may be enforced in appropriate proceedings, when they are not shown to be illegal or unreasonable. Such orders when duly made under authority conferred are by statute made prima facie reasonable and just; and the burden is upon the respondent to clearly show that they are unreasonable in their terms or in their practical operation.

2. In mandamus proceedings to enforce an order of the railroad commissioners duly made within the authority conferred requiring a railroad company to furnish designated facilities for the accommodation of passengers and shippers at a

station on its line of railroad, the main question to be determined is not whether the relators erred in their finding on the facts upon which they acted in making the order involved here, but whether the relators as railroad commissioners in making the order exceeded their authority or abused their official discretion to the substantial injury of the respondents' constitutional property rights.

3. When acting within the authority conferred upon them, a wide discretion is accorded to the railroad commissioners, and their valid orders, rules and regulations should be made effective as contemplated by the constitution and statutes. The statutes expressly provides that the authorized rules and regulations of the railroad commissioners "shall be deemed and held *prima facie* reasonable and just;" and when action is taken by the commissioners in the exercise of their undoubted authority, their administrative discretion will not be controlled by the courts and their regulations will be made effective in appropriate proceedings where an abuse of discretion is not clearly shown in unreasonable and arbitrary action taken.

4. In determining whether a rate, rule, regulation or order of the Railroad Commission upon a subject within its authority is so unreasonable and arbitrary as to be illegal and unenforceable, the court, in deference to the governmental functions conferred by law upon the commissioners, will not only require the *prima facies* of reasonableness impressed by the statute upon the rate, rule, regulation or order to be overcome by admission or proofs, but will require the admissions or proofs of facts tending to show unreasonableness to be clear and convincing, every reasonable doubt being yielded in favor of the rate, rule, regulation or order.

5. To afford reasonably adequate facilities at its own stations is an absolute duty of the carrier; and the burden of furnishing such facilities does not invade the respondent's property rights, when the requirements are not in fact unreasonable and arbitrary.

Original proceedings in Mandamus by the State.

Peremptory writ will issue.

*F. M. Hudson,* for Relators;

*Shutts, Smith & Bowen,* for Respondents.

### STATEMENT.

The alternative writ of mandamus issued herein by this court on March 18, 1913, is as follows:

"WHEREAS, by Petition filed in this court, wherein R. Hudson Burr, Newton A. Blitch and Royal C. Dunn, as Railroad Commissioners of the State of Florida, by F. M. Hudson, Special Counsel by them designated, are Relators, and the Florida East Coast Railway Company is respondent, it has been made to appear:

1. That the Florida East Coast Railway Company is a railroad corporation created and existing under the laws of the State of Florida and doing business as a common carrier in said State; that said company owns and operates, and for more than a year last passed has owned and operated, a line of railway lying wholly within this State and extending therein from Jacksonville, Florida, in a southerly direction to Key West, Florida; that the said company transports persons and property over its said line of railway as a common carrier for hire, and holds itself out as such common carrier for hire, and transports persons and property from points in this state to other points in this State as such common carrier for hire aforesaid.

2. That Peters, Florida, is and has been for many years last passed a non-agency station on the line of

railway of the said Florida East Coast Railway Company, at which local passenger trains have been accustomed to stop on flag, and at which freight has been received and delivered in carload and less than carload quantities; that said company has maintained and is maintaining a side track at the said point sufficient for the accommodation of eleven cars, but has not provided or maintained any station building; that the facilities now maintained and heretofore maintained at Peters, as aforesaid, are inadequate and insufficient for the proper accommodation of patrons of the said railway company desiring to use the said station;

3. That on to-wit, the 13th day of January, 1913, the Railroad Commissioners of the State of Florida did give notice in writing to the said Florida East Coast Railway Company that they, the said Railroad Commissioners, would hold a session at Peters aforesaid at eleven o'clock in the forenoon of January 23rd, 1913, for the purpose of considering whether they should require the said company to erect and maintain a freight and passenger station, extend its side track facilities, and install an agent at that point, at which time the said company would have a full and fair hearing.

4. That thereafter, on to-wit, the 23rd day of January, 1913, at eleven o'clock in the morning, pursuant to said notice, the Railroad Commissioners being then and there duly in session at Peters aforesaid, the said Florida East Coast Railway Company then and there appearing by its attorney, and the petitioners in the said matter appearing in their own behalf. And after hearing all parties who desired to be heard, the said matter was taken under advisement.

5. That thereafter, on to-wit, the 15th day of February, 1913, the said Railroad Commissioners did make

and enter their certain Order No. 389, in the words and figures following, to-wit:   Order No. 389; File No. 3380.

*Before the Railroad Commissioners of the State of Florida, in the Matter of Petition for Additional Side Track and Station Facilities at Peters, Florida.*

After due and lawful notice to all parties in interest, the Railroad Commissioners of the State of Florida met at Peters, Florida, a station on the line of the Florida East Coast Railway, in Dade County, at 11 o'clock in the morning of January 23rd, 1913, and then and there proceeded to hear and consider whether or not they should require the Florida East Coast Railway Company to erect a freight and passenger station, extend their side track facilities and install an agent at Peters. The said Florida East Coast Railway Company appearing by its attorney, Mr. W. Pruden Smith, of the firm of Shutts, Smith & Bowen, and the petitioners appearing by Mr. Thomas J. Peters, and others, in their own behalf.   After hearing all parties who desired to be heard, the said matter was taken under advisement.

And now on this day the Railroad Commissioners of the State of Florida, having considered the evidence submitted at said hearing, and having heard the parties in interest and being well advised in the premises, do find from the evidence submitted and heard at the said hearing that the said Florida East Coast Railway Company has maintained at Peters aforesaid for more than eight years last past a non-agency station at which local passenger trains have been accustomed to stop on flag and at which freight has been received and delivered in carload and less than carload quantities; and that the said company has maintained and is now maintaining

a side track at the said point sufficient for the accommo-
dation of eleven cars, but has not provided or maintained
any station building;

That said station has been voluntarily established
and maintained by said Florida East Coast Railway
Company.

That said commissioners do further find that the said
station is within one mile of Perrine, an agency station
which has been maintained by the said railway company
for many years, and the Commissioners announced at
the said hearing that had an application, as an original
proposition, been made to them to establish a station
and order facilities within a mile of another regularly
established station, where there were no intervening ob-
structions which prevented free access from one place to
the other, that the same would be denied. But the cir-
circumstances of this case develop the fact that Peters, as
a station was established about the same time as the
one at Perrine, and having veen voluntarily established
by the said company ought to be provided with proper
and adequate facilities for the accommodation of patrons
of the said station;

The said Railroad Commissioners do further find that
the facilities now maintained and heretofore maintained
at Peters as aforesaid are inadequate and insufficient for
the proper accommodations of patrons of the said rail-
way company desiring to use the said station;

It is therefore considered, ordered and adjudged that
the Florida East Coast Railway Company be and it is
hereby required to provide at Peters, Florida, aforesaid
additional side track facilities by providing a side track
or side tracks of at least double the capacity of the side
track now and heretofore maintained;

And that said railroad company be required to pro-

vide at said point an adequate and suitable depot building to contain two waiting rooms, one for each color, each of which shall have at least eighty (80) square feet of floor space, and a wareroom for freight to have at least four hundred (400) square feet of floor space;

And it is recommended by the said Commissioners, not required, that the said depot building should be so constructed that it may be utilized in the future for the purposes of an agency station;

And it is further ordered that the work on the said sidetrack shall be completed on or before the 15th day of March, 1913, and that the work on the said depot building shall be begun on or before the 15th day of March, 1913, and shall be prosecuted with all reasonable speed and completed on or before the 15th day of April, 1913;

It is further ordered that the application of petitioners for an order requiring the installation of an agent at Peters be and the same is hereby deferred to such time as the Commissioners may deem it proper to reopen this said question upon notice to the parties at interest.

Done and ordered by the Railroad Commissioners of the State of Florida in open session at their office in the City of Tallahassee, this 15th day of February, 1913.

R. HUDSON BURR,<br>Chairman.

6. That by the terms of said order No. 389 it was required that the work on the the said sidetrack should be completed on or before the 15th day of March, 1913, and that the work on the said depot building should be begun on or before the 15th day of March, 1913, and should be prosecuted with all reasonable speed and completed on or before the 15th day of April, 1913.

7. That the said Florida East Coast Railway Com-

pany has disregarded and failed and refused to obey the said Order No. 389, as above set forth, in that the said railway company has not provided at Peters aforesaid additional sidetrack facilities by providing a sidetrack or sidetracks of at least double the capacity of the sidetrack now and heretofore maintained at said station, as required in and by said Order No. 389, and did not complete the work on the said sidetrack on or before the 15th day of March, 1913, as required in and by said Order No. 389, and has not yet begun the same; and in that the said company did not begin and has not yet begun the construction at said point of an adequate and suitable depot building to contain two waiting-rooms, one for each color, each having at least eighty (80) square feet of floor space, and a ware-room for freight having at least four hundred (400) square feet of floor space; but on the contrary the said company has failed and refused and still continues to refuse so to do, in disregard of the orders of the Railroad Commissioners aforesaid.

8.    That the Railroad Commissioners of the State of Florida and the people of this State, are without adequate remedy in the premises, unless it be afforded by the interposition of this court through a Writ of Mandamus;

NOW, THEREFORE, we being willing that full and speedy justice be done in the premises, do command you, the Florida East Coamst Railway Company, forthwith

To provide at Peters, Florida, aforesaid, additional sidetrack facilities by providing a sidetrack or sidetracks of at least double the capacity of the sidetrack now and heretofore maintained at said point;

To begin the work of constructing at said point a suitable and adequate depot building to contain two waiting-rooms, one for each color, each having at least eighty

(80) square feet of floor space, and a ware-room for freight having at least four hundred (400) square feet of floor space, and to prosecute said work to completion with all reasonable speed;

Or that you appear before the Justices of this our Supreme Court sitting within and for the State of Florida at the court room in the City of Tallahassee, the Capital, on the first day of April, 1913, at ten o'clock in the morning of that day, and show cause why you refuse so to do.

And have you then and there this writ.

WITNESS the Honorable Thomas M. Shackleford, Chief Justice of the Supreme Court of the State of Florida, and the Seal of the said Court at Tallahassee, the Capital, this 18th day of March, A. D. 1913.

(Seal)                    M. H. MABRY,
                  Clerk of the Supreme Court
                  of the State of Florida."

By way of return to the alternative writ the respondent answered in substance, as follows:

"That respondent denies that Peter's Siding is, or has been for many years last past or at any period from the date of building of the siding at Peter's Siding, a non-agency station for the accommodation of freight and passengers, and, on the contrary, it alleges that it is and has been since the 15th day of February, 1904, a private siding for the accommodation of W. I. Peters, and his successor in interest of the packing house located at said point, viz: T. J. Peters, who is now the lessee and occupant of the packing house at said siding, and who has exclusive right to the use of the siding.

Respondent further shows that on February 15, 1914, W. I. Peters entered into a contract with the respondent for the building of a sidetrack sufficient to accommodate eleven cars, and also for the right to use certain land

adjacent thereto, upon which to build a packing house, and it was provided in and by said lease, among other things, that said siding should be for the exclusive use of the said W. I. Peters, and that it might, at any time, be discontinued by the lessor, and that the lessor should not be obliged to stop any of its trains at sad siding and that the lessee should not permit others to use the premises or any structure thereon; the original of said lease being attached hereto and made a part hereof and marked Exhibit "A."

Respondent further represents that subsequent to the date of the execution of said lease the said T. J. Peters succeeded by purchase or otherwise to the inter est of the said W. I. Peters, and took the same subject to the contractual relation existing between this respondent and said W. I. Peters, and that since the acquisition of the rights of W. I. Peters by T. J. Peters the aunual rental of one dollar per annum was paid by said T. J. Peters down to and inclusive of February, 1912, and that since said date the said T. J. Peters has failed and refused to pay said rent and has been occupying the premises of respondent as a tenant at sufferance.

Respondent further answering says that it has offered on various occasions to increase the sidetrack facilties at Peter's Siding for the benefit of said T. J. Peters, and has only imposed the responsible condition that said T. J. Peters should pay for the cost of installing such additional facilities and that this is a reasonable and just custom of respondent.

Respondent further answering the alternative writ, and particularly that portion of the order of the Railroad Commission, which finds that a non-agency station has been established for eight years last past, denies that a non-agency station has been maintained at Peter's Siding

VOL. 67, JANUARY TERM, 1914.    93

State *ex rel.* R. R. Com. v. F. E. C. Ry. Co.—Statement of Case.

for eight years last past, or any portion thereof, or that it has received, or offered to receive, freight in carload and less than carload quantities, except for the lessee under its contract, or delivered or offered to deliver freight in carload or less than carload lots, except for lessee, or for persons using the private siding with the permission of the lessee.

Respondent further avers that for the year ending December 31st, 1912, the following freight shipments left Peter's Siding, shipped by the following named consignees, viz: T. J. Peters, 673 tons; C. R. Graham, wood 73 tons; Parrish & Gauthier, wood 564 tons; Charles Penny, miscellaneous 2 tons; and that the total shipments from said station, other than those of T. J. Peters, who is the lessee, and for whose benefit the siding is maintained, was 637 tons of wood, of a total revenue value to respondent of $490.40 ,and a miscellaneous tonnage of two tons of the revenue value of $5.95; that that portion of the finding of the Railroad Commission, in which it is stated that a station has been voluntarily established and maintained, denies that the same is true, and, on the contrary, it alleges, as hereinbefore alleged, that Peter's Siding is not a station and never has been, and is only a private siding with the right reserved to respondent to, at any time, discontinue the same and remove its rails and facilities; that said Peter's Siding is located nine-tenths of a mile from Perrine, an agency station, at which there is maintained sidings more than sufficient to accommodate all the traffic offered or received within a territory of many miles surrounding it, and that it maintains also at said Perrine a depot with ample freight and passenger accommodatons, and that it also maintains at said station a station agent, who is on duty twelve months in each year; that south of Peter's Siding, about

two and one-half to three miles distant, there is maintained the regular agency station of Goulds, at which there are ample siding facilities and freight and passenger accommodations, and a regularly maintained agent, more than sufficient to accommodate all freight received or offered from the territory for many miles contiguous thereto; that it denies that there is any public necessity for the increase of its private siding, or for the building of a freight and passenger depot, and it respectfully represents unto the court in explanation of the reason why no increased sidetrack facilities are necessary, or the building of any freight and passenger depot, that within a territory beginning immediately north of Perrine and extending to within one-half mile north of Goulds, the station south of Peter's Siding, which territory is approximately three miles north to south and nine and one-half miles east to west, there is under cultivation on this date approximately the following acreage, to-wit:

Citrus Fruit .................................................257 acres;
Tomatoes, which acreage may vary from year
    to year .................................................751 acres;
Peppers .................................................  4 acres;
Beans .................................................  .05 acres;
Potatoes .................................................  5 acres;

and that out of the acreage of Citrus and tropical fruit, not all of which is bearing, more than fifty per cent. is as close to Perine or to Gould's as to Peter's Siding; that of the tomatoes, approximately 450 acres of the total is owned by T. J. Peters, and that of the total acreage, approximately seventy-five per cent is as close to Perrine as to Goulds, except that of T. J. Peters, as to Peter's Siding; that the seasons are so uncertain that the acreage herein given is, by no means permanent, and that for the present season T. J. Peters and other shippers in the neigh-

borhood will have no crops whatever to ship, by reason of floods, and this condition is liable to occur, judging from the past experiences, one season out of each three years. That within the territory mentioned there are approximately eighty-two dwelling houses, two school houses, no churches, no stores, and five packing houses; that of the total number of dwellings that only seven are as close to Peter's Siding as to Goulds or Perrine. That there are no school houses, no churches, and no stores at Peter's Siding ,and that out of the total number of packing houses of five, only those as close to Peter's Siding as to Perrine or Goulds are owned by T. J. Peters, the lessee of the respondent; that at the time the said private siding was established the country contiguous to Peter's Siding was wild, uncultivated and had no hard road facilities, over which said W. I. Peters and T. J. Peters could transport their freight, but that since said private siding was established there have been opened to the public 23.2 miles of public roads, all of which lead from Perrine, Goulds and from the adjacent territory into the main road, and of this total mileage 12.5 are rocked or hard-surfaced, and that all of the shippers in the above described territory can, with equal facility and at the loss of only a few minutes, reach Goulds or Perrine as well as Peter's Siding. A map of said territory is referred to and prayed to be made a part hereof if necessary; that the building of additional sidetrack facilities and a station building for the accommodation of the few inhabitants contiguous to Peter's Siding and for the freight received or transported would work a great hardship upon respondent, for the reason that the revenue derived from the business of the general public would not, by any means, justify the large expenditures necessary to build said siding and said station building, and

that it would result in an annual loss to respondent to maintain such station so close to other stations already equipped and maintained; that there are now several hundred regular stops for trains between Key West and Jacksonville, and that to equip and maintain a station at Peter's Siding so near to other stations would be discrimination against the general shipping public contrary to the laws of the Unted States, and would greatly interfere with the schedules of respondent's trains, particularly of freight trains carrying perishable products and engaging in carrying interstate commerce; that each and every allegation in the alternative writ not admitted is hereby expressly denied."

Issue was joined on this answer, and the cause was submitted to the court at the January Term, 1914, on the testimony taken and briefs filed.

WHITFIELD, J. (*After stating the facts.*)

This proceeding in mandamus is to enforce an order of the Railroad Commissioners requiring the respondent railroad company to provide specified depot buildings for freight and passenger accommodation and also additional sidetracks at a place called "Peters" on respondent's line of railroad.

Orders duly made by the Railroad Commissioners within their statutory authority to regulate the maintenance and operation of railroads as common carriers, may be enforced in appropriate proceedings, when they are not shown to be illegal or unreasonable. Such orders when duly made under authority conferred are by statute made *prima facie* reasonable and just; and the burden is upon the respondent to clearly show that they are unreasonable in their terms or in their practical operation.

State *ex rel.* R. R. Com. v. F. E. C. Ry. Co.—Opinion of Court.

See State *ex rel.* Railroad Comm'rs v. Atlantic Coast
Line R. Co., 64. Fla. 469, 60 South. Rep. 186; State *ex rel.*
Atty. Gen. v. Atlantic Coast Line R. Co., 48 Fla. 114, 37
South. Rep. 652; State *ex rel.* Railroad Comm'rs v. At-
lantic Coast Line R. C., 67 Fla.——, 63 South. Rep. 729.

The relators contend in effect that the place called
"Peters" has been for a number of years a non-agency
station on the respondent's railroad, at which local pas-
senger trains have been accustomed to stop on flag, and
at which freight has been received and delivered in car-
load and less than carload quantities; that the station
having been voluntarily established by the respondent,
such station should be provided with proper and adequate
facilities for the accommodation of the patrons of
the station; and that the facilities now afforded at the
station are inadequate and those demanded by the order
here sought to be enforced are reasonably required for
the convenience of the patrons of the station. For the
respondent it is insisted that  *   *   *   the siding at
Peters was put in under special contract for the use of
one shipper there, who now "desires more sidetrack facil-
ities for his personal use," and that apart from this
shipper "there would be no necessity even for the stopping
of trains at Peters Siding for freight or passengers, and
that there is no necessity for station facilities at this
point," and further that an observance of the order would
entail an annual expense upon the respondent not justi-
fied by the business done at the point.

The main question to be determined in this mandamus
proceeding is not whether the relators erred in their
finding on the facts upon which they acted in making
the order involved here; but whether the relators as rail-
road commissioners in making the order exceeded their
authority or abused their official discretion to the sub-

7—Vol. 67.

98        SUPREME COURT OF FLORIDA.

State *ex rel.* R. R. Com. v. F. E. C. Ry. Co.—Opinion of Court.

stantial injury of the respondent's constitutional property rights.

By statute the Railroad Commissioners are authorized "to require the establishment of such freight and passenger depots as the condition of the road, safety and convenience of passengers and prompt delivery of freight and the most convenient transfer of passengers and freight may justify," "to require any  *  common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenient and prompt handling, transportation and delivery of all freights offered along its line for transportation, and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities and the prompt handling, transportation and delivery of all freights offered." Paragraphs 2893, 2896, Gen. Stats. of 1906.

When acting within the authority conferred upon them, a wide discretion is accorded to the Railroad Commissioners, and their valid orders, rules and regulations should be made effective as contemplated by the constitution and the statutes. The statute expressly provides that the authorized rules and regulations of the Railroad Commissioners "shall be deemed and held *prima facie* reasonable and just;" and when action is taken by the commissioners in the exercise of their undoubted authority, their administrative discretion will not be controlled by the courts and their regulations will be made effective in appropriate proceedings where an abuse of discretion is not clearly shown in unreasonable and arbitrary action taken.

A railroad common carrier may, in addition to the facilities and accommodations already furnished, be required to render a particular service that it is essen-

tially the duty of the carrier to do for the reasonable convenience of its patrons among the public, and to meet the reasonable requirements of the public service undertaken. Even though such a particular duty if enforced would be in itself unremunerative and burdensome, such a result would be an incident to the service voluntarily undertaken, in consideration of the franchises permitted to be used for the public good, and the property rights of the carrier would not thereby be unlawfully invaded, if the particular service is reasonably necessary for the public convenience, and the burden to the carrier has some fair relation to the benefits accruing to the public, and the burden of the particular service, considered with reference to the entire business of the carrier, does not in reality amount to a denial to the carrier of a reasonable compensation for the service rendered by it as an entirety.

If the performance of a particular useful, but nonessential duty will as a part of a general public· service contribute to the public convenience, the fact that the particular service must be rendered at a loss, does not, in view of the nature of the duty reuqired, excuse nonperformance, but the loss occasioned by the performance of the particular duty may be considered in determining the reasonableness of the order requiring the particular service to be rendered.

In determining whether a rate, rule, regulation or order of the Railroad Commission upon a subject within its authority is so unreasonable and arbitrary as to be illegal and unenforceable, the court, in deference to the governmental functions conferred by law upon the Commissioners, will not only require the *prima facies,* of reasonableness impressed by the statute upon the rate, rule, regulation or order to be overcome by admission or

proofs, but will require the admissions or proofs of facts tending to show unreasonableness to be clear and convincing, every reasonable doubt being yielded in favor of the rate, rule, regulation or order.

The reasonableness of a rate, rule, regulation or order of the Railroad Commissioners is to be determined by a consideration of the rights of all parties directly and materially affected by the rate, rule, regulation or order. This involves a consideration of all the facts and circumstances by such appropriate processes and standards of reasoning and computation as are afforded by law or by common experience and the dictates of right and justice. State ex rel., Railroad Comm'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; Atlantic Coast Line R. R. Co. v. N. C. Corporation Commission, 206 U. S. 1, 27 Sup. Ct. Rep. 585.

To afford reasonably adequate facilities at its own stations is an absolute duty of the carrier, and the burden of furnishing such facilities does not invade the respondent's property rights, when the requirements are not in fact unreasonable and arbitrary. See Louisville & N. R. Co. v. Railroad Comm'rs, 63 Fla. 491, 58 South. Rep. 543. Where the requirement is not among the carrier's absolute duties, the expense to be incurred may be one of the controlling considerations. See Oregon R. & Nav. Co. State of Washington ex rel. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. Rep. 535.

A proper test is not whether the facilities required by the order are in fact *necessary*, but whether they are reasonable for the convenience and safety of the public to be served, and the expense to the carrier is not so unreasonably out of proportion to the convenience afforded to the public as to impose an unlawful burden upon the carrier. No question of confiscation is involved.

The testimony shows that only a few persons are to be served at present as shippers or as passengers at Peters, which is less than a mile from another station, and that the expense of observing the order would exceed the receipts at the station from all others except the principal patron for whom the siding was put in under special contract. The carrier now uses Peters as a non-agency station. It is within the authority and lawful discretion of the Railroad Commission to require appropriate and adequate depot and sidetrack facilities at such point, and while the order is perhaps an extreme one, it does not clearly appear from the evidence that the requirements sought to be enforced in this proceeding are in cost and extent so out of proportion to the public benefit and so arbitrary and unreasonable as to amount to an abuse of official authority or discretion.

The future may justify the requirement; and it is within the province and duty of the Railroad Commissioners and the carrier to anticipate the reasonable requirements of prospective growth of the business done by the carrier.

A peremptory writ will issue.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.