THE STATE OF FLORIDA, *ex rel.,* RAILROAD COMMISSIONERS, *Relators,* v. THE FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Respondent.*

Opinion Filed February 16, 1915.

1. Mandamus will issue only where a clear right to the writ is shown.

2. The orders of the Railroad Commissioners directing the establishment of stations by railroad companies and Common Carriers in the State will be accorded the force and weight required by the statute, but if it appears that such orders were made indisputably contrary to the evidence or without any evidence the character of *prima facie* reasonableness will be destroyed thereby and the order will be deemed to be arbitrary and therefore made without the consideration the statute requires to be given such matters by the Railroad Commissioners.

3. Whether a legislative exercise of the police powers including the regulation of railroads is reasonable is a judicial question and even though the law gives to administrative action the effect of *prima facie* reasonableness the courts

may inquire into the reasonableness of the action and if it clearly appears that the administrative action complained of is an abuse of discretion and is not in fact reasonable such action will not be enforced.

4. Unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners and when it appears by the pleadings or the evidence in a case that an order or regulation is unreasonable or unjust with reference to all the substantial interests affected by it or violative of constitutional provisions for the protection of private property rights such regulations will not be enforced by the courts.

5. The duty of a railroad corporation to provide fit and suitable roadbeds and tracks and rolling stock may be distinguished from the duty to provide station and depot agencies along its line of road. The one is an essentially higher and more important duty than the other. In the latter case the fact that the performance of the duty will be unremuneraany evidence the character of *prima facie* reasonableness of the order requiring it to be performed.

6. Where in an application by the Railroad Commissioners for a writ of mandamus to compel a railroad corporation to establish and maintain an agency station at a certain point on the line of its railroad, it appears in the return of the respondent which was demurred to by the relators, that the railroad is operated at a loss, that its stockholders receive no dividends, that there is no sinking fund, that its income is not sufficient to pay the interest which it is obligated to pay on its bonds, that the present value of the railroad properties is greater than its bonded indebtedness and par value of its capital stock, and that to establish the agency would entail further financial loss on the company, and that the amplest accommodation for the business the road receives exists at the point where the order directs the station to be established and maintained, the order of the Railroad Commissioners will be deemed to be unreasonable and the demurrer to the return will be overruled.

7. Where in an application by the Railroad Commissioners for a writ of mandamus to compel a railroad corporation to establish and maintain an agency station at a certain point on its line of railroad, it appears in the return of the respondent which was demurred to by the relators that no testimony was taken by the Railroad Commissioners to show any necessity for the establishment of such agency, that no witnesses were examined, that there was no evidence before the Commissioners of any delay on the part of the respondent in handling, receiving or delivering freight at the said point, and that the order was made without evidence as to the necessity for establishing such an agency, it will be deemed that such an order was not made in due course of law and is subject to be set aside.

This is a case of original jurisdiction.

Motion to strike overruled.

SHACKLEFORD AND COCKRELL, JJ., dissenting.

*F. M. Hudson,* for Relators;

*Alex. St. Clair-Abrams,* for Respondent.

ELLIS, J.—This is an original application to this court for a writ of mandamus requiring the respondent, the Florida East Coast Railway Company to conform to an order of the Railroad Commissioners requiring and directing the said respondent to establish and maintain an agency station at Mims, Florida.

The order of the Railroad Commissioners is as follows:

"Order No. 415.   File No. 3402.

*Before the Railroad Commissioners of the State of Florida*

168     SUPREME COURT OF FLORIDA.

In the Matter of the Application for an Order Requiring the Florida East Coast Railway Company to Establish and Maintain an Agency Station at Mims, Florida.

After due and lawful notice this matter came on for consideration before the Railroad Commissioners of the State of Florida at their office in the City of Tallahassee on the 18th day of March, 1913, at ten o'clock in the morning, the Florida East Coast Railway Company then and there appearing by its Counsel, Honorable Alexander St. Clair-Abrams, who was fully heard. And thereupon the said matter was taken under advisement.

And now on this day, the said matter coming on for further consideration, the Railroad Commissioners of the State of Florida do find that the freight and passenger business done by the Florida East Coast Railway Company at Mims, a flag station on its line of railway, is sufficient to warrant and necessitate the maintenance of an agency at said point.

WHEREFORE IT IS ORDERED AND ADJUDGED by the Railroad Commissioners of the State of Florida that the Florida East Coast Railway Company be and it is hereby required and directed to establish and maintain an agency station at Mims aforesaid, the said agency station to be maintained from and after the 1st day of November, 1913.

DONE AND ORDERED by the Railroad Commissioners of the State of Florida, in session at their office in the City of Tallahassee, this 29th day of September, A. D. 1913.

                              R. Hudson Burr, Chairman."

An alternative writ of mandamus was issued command-

ing the respondent to establish and maintain an agency station at Mims, a station on the line of its railway between Titusville and Enterprise Junction, or to show cause before the Justices of this court on the day named in the writ why it refuses so to do.

The alternative writ alleges that the respondent Florida East Coast Railway Company is a railroad corporation doing business as a Common Carrier in this State, that it operates a line of road lying wholly within the State and extending from Jacksonville to Key West, and in connection therewith a branch line, extending from Titusville on the main line to Enterprise Junction on the line of the Atlantic Coast Line Railroad Company, that the corporation transports persons and property over its line of railroad as a Common Carrier, and holds itself out as such. That Mims is a non-agency station between Titusville and Enterprise Junction at which local passenger trains have been accustomed to stop on flag, and at which freight has been received and delivered in carload and less than carload quantities. That on the 12th day of February, 1913, the Railroad Commissioners notified the railroad company that the Commissioners would be in session at their offices in Tallahassee on the 11th day of March, 1913, for the purpose of hearing and considering whether or not they ought to require the railroad company to establish and maintain an agency station at Mims; that on application of the attorney for the railroad company the hearing was postponed to the 18th of March, and on that date the Railroad Commissioners being in session and the railroad company appearing by its attorney, and after hearing all who desired to be heard, the matter was taken under advisement; that on the 29th day of September, 1913, the Railroad Commissioners made and en-

tered the order above copied; that the railroad company has disregarded and failed and refused to obey the order, and has not at any time since the entry of the order maintained an agency at Mims.

The return of the railway company to the alternative writ, admits the foregoing allegations, and avers that it filed an answer to the notice served upon it, which answer set forth in detail and in full all grounds of defense against the establishment of a regular agency at Mims, and beginning at paragraph seven avers that the order was unjust and unreasonable for the reasons set forth in the written defense submitted to the Commission, and for the further reasons: That the total business at Mims does not warrant or require the establishment of an agency there; that to establish the agency it would be necessary for the company to spend approximately $3,170.00 in the construction of a freight and passenger station with the necessary supplies and equipment, and the annual cost of the agency would not be less than $1,388.00. That the freight and passenger earnings of the station of the calendar years ending December 31st, 1910, 1911 and 1912, were as follows:

"For the year ending December 31, 1910, the freight forwarded aggregated $5,594.27, of which there were forwarded in carload lots $4,507.19, leaving only $1,087.08 of revenue from less than carload lots. Of the total revenue of freight forwarded, $4,612.94 were forwarded during the months of January, February, November and December, leaving only $981.23 revenue derived from this source during the remaining eight months.

The total amount of freight received during the entire year brought only a revenue of $2,606.02.

The total number of passengers out during the same year was 891, with a total revenue of only $294.05. The total number of passengers in during the same year was 672, with a total revenue of $214.80.

In 1911 the total revenue from freight forwarded was $3,449.65, of which $2,153.00 was from freight shipped in carload lots, leaving only $1,196.65 of revenue from less than carload lots. Of the aggregate amount of freight received for the year ending December 31, 1911, $3,120.60 were received during the months of October, November and December, leaving only $329.05 for the remaining nine months of the year. During the same year the total amount from freight received was $2,320.86. The court will perceive that there was a heavy decrease of revenue during 1911 as compared with 1910.

The number of passengers out during the same year was 875, producing a revenue of $238.45. The number of passengers in during the same year was 747, producing a revenue of only $200.30.

During the year ending December 31, 1912, the business of the station increased and slightly exceeded the business of 1911. It was as follows:

Total revenue from freight forwarded, $6,057.44, of which $4,713.19 was from freight shipped in carload lots, leaving only $1,344.25 from freight shipped in less than carload lots. Of the total freight forwarded $4,716.27 were during the months of October, November and December, leaving only $1,341.17 during the remaining nine months. During the same year the total amount of revenue derived from freight received was $2,811.44. I call the attention of the court to the fact that the total rev-

enue from freights shows but a very small increase over 1910.

During the same year the number of passengers out was 1,345, producing a revenue of $372.95. The total number of passengers in was 1,219, producing a revenue of only $382.73. During the year 1912 there were only an average of 4 passengers per day outbound and only 3.4 per day inbound."

That the number of passengers in and out during the fiscal years ending June 30, 1911, 1912 and 1913 were 1,598 for the year 1911, 2,054 for 1912, and 3,413 for 1913; that the total revenue from carloads of freight forwarded from Mims for the three years above named were $3,981.15 for 1911, of which $3,444.22 were derived during the months of October, November and December; $2,803.79 for 1912, of which $2,164.17 were received during the same three months of that year, and $6,421.88 for 1913, of which $5,635.95 were received during five months, September, October, November, December and January; that the freight earnings of the station ffuctuate very much each year, and afford no reliable basis for revenue; that the entire gross earnings from all sources at Mims for the three years above named were as follows: $6,943.76 for the year ending June 30, 1911; $7,156.45 for 1912, and $10,717.54 for 1913. Statements and tables showing the foregoing figures fully and in detail were attached to the return, and made a part of it.

It was further averred that the company would be compelled to borrow the money with which to construct the freight and passenger station, and that would involve an additional charge of $500.00 annually, making a total of not less than $1,850.00 per year, or nearly 20 per cent of

the gross earnings at the station; that the amount of revenue depends entirely upon the volume of fruit and vegetables shipped from that point, and that is uncertain and fluctuating; that nearly 80 per cent of the gross revenue at Mims is earned in from three to four months of each year, and that during the balance of the year the business is exceedingly small and does not call for an agent there; that Mims is located only four miles from Titusville, a main line station and junction of the company's road; that there has never been to the knowledge of respondent any complaint from Mims as to the handling of freight promptly at that point; that respondent's conductors act as its agents in the receipt and delivery of freight, and that there is at Mims at this time the amplest accommodations for all the business it receives, and that there is an eighteen car commodity side-track there which is more than sufficient for the present business at that point; that to compel respondent to establish a regular agency at Mims would be to deprive it of a reasonable compensation for the services rendered by imposing upon it additional and unnecessary expenses; that its road is already being overcrowded with regular agency stations at short distances from each other, most of which have been established by order of the Railroad Commissioners over the protests and objections of the respondent, thereby impeding and delaying the movement of all its trains; that where a regular agency station is established the respondent is compelled to stop nearly all its passenger and freight trains at such stations; that frequently there are neither passengers nor freight to be delivered or received at Mims, which would impose a further delay in running its trains and additional expense in the consumption of fuel and the operation of its trains; that the respondent is not now earning, nor ever has earned a reasonable

profit on its investment; that the annual increase of the gross business on its line of road is comparatively small, and while its increase has been good in passenger traffic, that the increase of expenditures rendered necessary by the enhanced value of practically all articles entering into the use and operation of railroads, and the great increase of the cost of labor has resulted in necessary expenditure largely exceeding the increase of its business.

That the total earnings and expenditures of the respondent's road for the year ending June 30, 1911, was as follows:

Gross Earnings .........................$4,181,277.80
Expenses including taxes, interest and other
    charges, .......................... 4,114,147.97

                 Surplus.............$    67,129.97

Of which $25,000.00 was interest received on deposits. That of the interest paid $1,295,000 was paid on the first and second mortgage bonds at 4 1-2 per cent and 4 per cent respectively.

For the year ending June 30, 1912,

Gross Earnings .........................$4,426,935.45
Expenses not including interest, taxes and
    other charges, ...................... 3,117,081.06

             Net Earnings ..... 1,309,854.39

Taxes ......................$186,560.00

State *ex. rel.* Railroad Com. v. F.E.C. Ry. Co.—Opinion of Court.

| | | |
|---|---|---|
| Hire of Equipment............ | 134,282.09 | |
| Rentals ..................... | 15,748.73 | 336,591.42 |

| | | |
|---|---|---|
| Net earnings applicable to interest on bonds and dividend | | 973,262.97 |
| Interest on 1st Mortgage Bonds | 468,875.00 | |
| Interest on 2nd Mortgage Bonds | 500,000.00 | 968.875.00 |
| Surplus ........... | | 4,387.97 |
| To which add interest on deposit | | 46,832.12 |
| Balance to profit and loss................ | | 51,220.09 |

That for the year ending June 30, 1912, there was an increase of gross earnings amounting to $245,657.60; that the increase of the road's expenditure exclusive of interest, taxes, hire of equipment for that year was $513,370.87; that the increase for taxes, hire of equipment and rentals was $76,023.81, thus showing an aggregate increase of expenses over the increase in receipts of $304,651.92, leaving net earnings to be applied to interest and dividends of $973,262.97, to which could be added $46,832.12 received from interest on deposits, making a total of $1,020,095.09, or less than 3% net earnings on the investment in the property, and not exceeding 2 1-2% on the present value of the property. That the property of the company represents an investment of over $40,000,-000.00, and the present value of the property is "greater than this sum over $40,000,000.00." That it has outstanding in first mortgage bonds $11,000,000.00; second mortgage bonds $20,000,000.00, and $5,000,000.00 common stock, all of which purchased and paid for at par, and

that no dividends are paid on the stock; that it was compelled to reduce the interest on its second mortgage or income bonds to 2 1-2%, although the interest had been previously fixed at 4%, and the holders of said bonds were entitled to receive 4%.

That while there has been a small increase in the freight and passenger traffic since June 30, 1913, to December, 1913, and the passenger traffic has continued to fairly maintain itself, its freight business since December 31st, 1913, appears to have fallen off, but respondent cannot state the exact figures, that with the aggregate business for the six months ending December 31st, shows a small increase, the aggregate expenses for the same six months shows an increase of over $50,000.00 above the increase of business, and that unless the balance of the fiscal year shall show a larger increase of freight and passenger business than now seems probable, respondent will not be able to pay 2 1-2% of interest on its second mortgage bonds, and may not be able to pay exceeding 1 1-2% on said bonds; that the small surplus existing at the end of the fiscal year ending June 30, 1913, was insufficient to meet extraordinary contingencies; that it has no sinking fund of any kind; that it is compelled to keep up its railroad and equipment to the highest standard of condition; that it is threatened with further reduction of its revenue by orders of the Interstate Commerce Commission and the Railroad Commissioners of Florida, affecting rates on fruit and vegetables, charges across the bridges at Jacksonville and Palatka, amendments to the Rules of the Florida Railroad Commissioners numbered 15 and 19, and reductions of its freights on Class "P," aggregating $300,154.70; that in addition it is required to make large increases of expenditures under the law and orders of the Railroad Commissioners and

the Interstate Commerce Commission; that the freight produced on its line of road consists principally of fruit and vegetables which fluctuate greatly in volume and cannot be depended upon for any regular or steady income; that there is no cotton, phosphate or kaolin produced on its line, its lumber business is local, and its naval stores business is very small; that the tonnage per mile of the other two principal railroads in Florida is much greater than that of the respondent's road. That it cannot establish an agency at Mims without making constructions to cost $3,170.00; that it may also be compelled to construct a place of residence for its agent; that the financial condition of the road does not warrant it increasing its expenditures at Mims in view of the gross business done; that while its business in the past has increased, it is not now increasing; that its holding the passenger business is due almost entirely to the increase on its Key West extension; that its net earnings are steadily decreasing; that it has been compelled to reduce the interest on its second mortgage bonds from 4% to 2 1-2%; that it has not been able to pay any dividends on the $5,000,000.00 of stock which was sold by respondent at par; that during the fiscal year ending June 30, 1914, its expenses will further increase approximately over $120,000.00, as it was compelled to increase the salaries and wages of its employees, including conductors, trainmen, operators, etc., aggregating approximately over $120,000.00, beginning July, 1913; that this increase of expenses has not been followed by an increase in the aggregate business of the respondent; that the actual investment of money in the Florida East Coast Railway approximates over $40,000,000.00, and that the present value of the Florida East Coast Railway is considerably over $40,000,000.00; that there are $5,000,000.00 of stock

purchased and paid for at par on which no dividends have
been paid for years; that in addition a large amount has
been invested in the construction, betterment and im-
provement of the road on which no dividends have been
paid, and the road has not earned in the past two years
as much as 2 1-2% on the actual investment made by it
on its property; that it operates its road as economically
as possible; that it pays no higher wages to its employees
than it is compelled to pay for the services of competent
and experienced men; that it purchases supplies and
equipment at the lowest possible prices commensurate
with the kind and quality it is compelled to use; that it
has never earned a reasonable compensation for the many
millions of dollars invested, and that during the past
fiscal year it has suffered a loss of about $130,000.00 re-
duction of rates on fruits and vegetables.

An amendment of the return granted December 22,
1914, avers that the respondent in compliance with the
citation of the Railroad Commissioners, dated February
12th, 1913, appeared before the Railroad Commissioners
and filed a written answer showing why the said regular
agency should not be established; that no testimony was
taken by the Railroad Commissioners at said meeting to
show any complaint from any of the patrons at Mims,
or to show any necessity for the establishment of such
agency station there; that no witnesses were examined;
that if any witnesses were examined respondent was
never notified of the examination of such witnesses, and
was never allowed an opportunity to confront or cross-
examine them; that there was no evidence before the
Commissioners of any delay on the part of the respond-
ent in handling, receiving or delivering freight promptly
at Mims; that the order was made without any evidence

as to the necessity for the establishment of an agency there, and that the order was made without due process of law, and in violation of respondent's constitutional right.

To this return the relators filed their motion to strike certain averments, and at the same time filed their demurrer as follows:

"1.   Beginning with the paragraph numbered 7 of said return, to and including the first paragraph on page 6;

2.   The second paragraph on page 6.

3.   Beginning with the first paragraph on page 7, through the last paragraph of the said return.

And for cause of demurrer the relators show:

1.   The said return does not present a valid defense to the alternative writ.

2.   The order of the Railroad Commissioners set out in the alternative writ is prima facie reasonable and just, and the return does not set up facts sufficient to show an abuse of discretion, so as to render the administrative discretion of the Commissioners subject to review.

3.   The order in question undertakes to enforce an absolute duty of the respondent carrier, which must be performed regardless of pecuniary loss thereby incurred.

4.   It is not made to appear from the return that enforcement of the order will invade respondent's property rights.

5.   It is not made to appear that compliance with the order will result in a pecuniary loss to respondent.

6. The facts alleged on pages 2, 3, 4, 5 and 6 only raise a question as to the necessity for an agency at Mims. This being an administrative question, the court's power of review does not extend to a determination of that question.

7. Whether the business done at a particular station warrants the establishment of an agency, or the installation of certain facilities, is an administrative, not a judicial question.

8. It is not made to appear that the expense incident to installing and maintaining an agency at Mims, in obedience to the orders of the Commissioners, is so out of proportion to the business done there that compliance therewith will invade the constitutional rights of the respondent.

9. In alleging the facts found on pages 7, 8, 9, 10, 11, 11 1-2, 12, 13, and 14, respondent is manifestly relying on the rule laid down in the case of Smyth v. Ames, which rule is not applicable to this case.

10. In this case no question of rate reduction, or depletion of revenue is involved. The test is found in the necessities of the public rather than the effect on the carrier.

11. The fact that respondent is not now earning, and never has earned, a reasonable profit upon its entire investment does not relieve it of its primary duty to provide adequate facilities.

12. The matter alleged does not show, nor is it shown elsewhere in the return, that the regulation complained of will reduce the revenues of respondent.

13. The power of the Railroad Commissioners to make regulations does not cease merely because the carrier's revenues are not sufficient to enable it to pay dividends. The power of regulation is not to be measured by the prosperity of the carrier."

As the motion to strike is addressed practically to the entire return as recited herein from the seventh paragraph, and reaches the same matter to which the demurrer is addressed, we will treat them both as a demurrer to the return.

A mandamus issues only where a clear right to the writ is shown.

It is the duty of the Railroad Commissioners to require railroad companies and Common Carriers doing business in this State to establish stations, at which trains may be required to stop, to require the erection of such freight and passenger depots, houses, platforms and wharves with all necessary conveniences as the safety, convenience and comfort of passengers and the proper handling, care, protection and prompt delivery and transportation of freight may require, and to require a sufficient force of employees to be maintained thereat to conduct in a proper manner the business of the carriers. Chapter 6527, Laws of Florida, 1913. The orders of the Railroad Commissioners directing the establishment of stations by railroad companies and Common Carriers will be accorded the force and weight required by the statute, and to which the judgments and conclusions of such a governmental agency are entitled; but if it appears that such an order was made indisputably contrary to the evidence, or without any evidence, the character of prima facie reasonableness is destroyed, it must be deemed to be arbitrary and

therefore made without the considerations which the
statute requires to be given such matters by the Railroad
Commissioners. The Railroad Commission Act of this
State, and the amendments thereto, contemplate that the
Commissioners shall inquire into the necessities which
seemingly demand their attention and base their deter-
mination upon the evidence before them. If it is made
to appear that these requirements of the statute were not
observed, that the order was made without any evidence
before the Commissioners in support of the necessity or
propriety of it, or clearly contrary to the evidence, the
order will be deemed to have been made without authority
of law, and therefore not possessing the status of prima
facie reasonableness. Louisville & N. R. Co. v. Railroad
Commission of Kentucky, ......, U. S. ......, 35 Sup.
Ct. Rep. 146, No. 5, Feb'y 1, 1915; Interstate Com-
merce Commission v. Union Pac. R. Co., 222 U. S. 541,
32 Sup. Ct. Rep. 108. Whether a legislative exercise of
the police power including the regulation and control of
railroads is reasonable, is a judicial question. Atlantic
Coast Line R. Co. v. North Carolina Corp. Com., 206 U.
S. 1, 27 Sup. Ct. Rep. 585; Interstate Commerce Commis-
sion v. Illinois Cent. R. Co., 215 U. S. 452, 30 Sup. Ct.
Rep. 155. In the case of State *ex rel.* Railroad Com'rs
v. Louisville & N. R. Co., 62 Fla. 315, 57 South.
Rep. 175, this court said: "But action taken by an ad-
ministrative officer or board must not only be in accord-
ance with organic law, but it must conform to applicable
valid statutes and must be reasonable in its operation.
Such administrative action is also subject to judicial re-
view as to matters that are not concluded by the exercise
of administrative discretion and action. Even though
the law gives to administrative action the effect of prima
facie reasonableness, the courts may inquire into the rea-

VOL. 69, JANUARY TERM, 1915.        183

State *ex. rel.* Railroad Com. v. F.E.C. Ry. Co.—Opinion of Court.

sonableness of the action. If in appropriate judicial proceedings it clearly appears that the administrative action complained of is an abuse of discretion and is not in fact reasonable, it will not be enforced, and it may be annulled or checked." See also State *ex rel.* R. R. Com'rs v. Atlantic Coast Line R. Co., 67 Fla. 441, 63 South. Rep. 729; State *ex rel.* Railroad Com'rs v. Florida East Coast Ry. Co., 67 Fla. 83, 64 South, Rep. 443; State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 63 Fla. 274, 57 South. Rep. 673; State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 65 Fla. 424, 62 South. Rep. 591; State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 58 Fla. 524, 50 South. Rep. 425; State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385.

The doctrine has been approved by this court many times that unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners, and when it appears from the pleading or the evidence in a case that an order or regulation is unreasonable, or unjust with reference to all the substantial interests affected by it, or violative of constitutional provisions for the protection of private property rights, such regulations will not be enforced by the courts. State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; State *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385. There is a distinction in character and importance between the duties which a railroad company owes to the public. The duty to provide fit and suitable roadbeds and tracks and rolling stock may be distinguished from the duty to provide stations and depots along its line of road. The former may be classed as a

duty vitally necessary to the public and its performance absolutely essential, while the latter may be a useful, but nonessential duty.   One makes for the security of the lives and property of all its patrons, the other for the convenience and comfort of some of its patrons.  The one is an essentially higher and more important duty than the other.  In the one case the fact that the performance of the particular duty will be unremunerative will not in view of the nature of the duty to the public excuse non-performance, while in the other, the fact that the particular service may incur a loss to the railroad company does not excuse non-performance, the loss occasioned by its performance may be considered in determining the reasonableness of the order requiring it to be performed. See State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, text 358, 57 South. Rep. 175; State *ex rel.* Railroad Com'rs v. Florida East Coast Railway Co., 67 Fla. 83, 64 South. Rep. 443.

The return of the respondents to the alternative writ in this case may be unnecessarily full as to the details of its business and financial condition, but the averments that the railroad is being operated at a loss, that its stockholders receive no dividends on the stock owned and held by them, that the railroad company has no sinking fund of any kind, that its income is not sufficient to enable it to pay the interest which it is obligated to pay on its second mortgage bonds, that its business is not increasing, that it has never earned a reasonable compensation on the money invested in its property, that the actual investment of money in the Florida East Coast Railway is approximately over $40,000,000.00, and that the present value of the Florida East Coast Railway is considerably more than that sum, to-wit, "over $40,000,000.00," that to

establish and maintain an agency at Mims such as is required in the order would entail a further financial loss upon the company as distinguished from a mere reduction of profit, that there has never been to the knowledge of the company any complaint from Mims as to the handling of freight promptly, at that point, that respondent's conductors act as its agents in the receipt and delivery of freight, that there is at Mims the amplest accommodations for all the business it receives, that the total business at Mims does not warrant or require the establishment of an agency there, were averments of such facts as the Railroad Commissioners were bound to consider in determining the reasonableness and justness of the order. If these allegations of fact are true, and the demurrer admits them to be true, the unreasonableness of the order is made to appear, and it is the duty of this court to overrule the demurrer. State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; State *ex rel.* Railroad Com'rs v. Florida E. C. R. Co., 64 Fla. 112, 59 South. Rep. 385.

The amendment to the return filed December 22, 1914, also avers that the respondent in compliance with the citation of the Railroad Commissioners dated February 12th, 1913, appeared before the Railroad Commissioners and filed a written answer showing why the regular agency should not be established at Mims; that "no testimony was taken by the Railroad Commissioners at said meeting to show any complaint from any of the patrons at Mims, or to show any necessity for the establishment of such agency station there, that no witnesses were examined," "that there was no evidence before the Commissioners of any delay on the part of the respondent in handling, receiving or delivering freight promptly at Mims, that

the order was made without any evidence as to the necessity for the establishing of an agency there." These averments were admitted by the demurrer, they show that the order was made without any evidence to support it. the order was therefore not made in due course of law. and is subject to be set aside. See Louisville & N. R. Co. v. Finn, ......, U. S. ...., 35 Sup. Ct. Rep. 146; State ex rel. Railroad Com'rs. v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385; Florida East Coast Ry. Co. v. Interstate Commerce Commission, 234 U. S. 167, ...... Sup Ct. Rep. .......

The fact that the respondent's business has increased at Mims does not neutralize the legal effect of the admissions, that the enforcement of the order will increase the admitted deficit of the respondent in compensatory revenues; that the total business does not require the establishment of an agency there; that respondent's entire business is done at a loss to it; that no testimony was taken, and the order made without any evidence to show any necessity for the establishment of such an agency there, and that the accommodations already provided are ample. These admissions show that the order was not just and reasonable, as the statute requires, but arbitrary and illegal, so that its enforcement would violate property rights secured by the State and Federal Constitutions. See State ex rel. Railroad Com'rs v. Florida East Coast R. Co., 65 Fla. 424, 62 South. Rep. 591.

The motion to strike and the demurrer are overruled, with leave to the relators to join issue upon the averments of the return, as they may be advised.

Upon issue joined testimony may be taken upon commission issued by the clerk of this court, or before a jus-

tice of the peace in accordance with the statutes of the State and the rules governing Circuit Courts in the matter of depositions; and the clerk of this court is directed to issue commissions for the taking of such depositions as may be applied for by either party in accordance with such statutes and rules; or the parties may by agreement take testimony before some one authorized to administer oaths.

TAYLOR, C. J., AND WHITFIELD, J., concur.

COCKRELL, J., dissenting.

I am unable to concur with the order of the court just pronounced.

The Commission had evidence, out of the mouth of the respondent that at this non-agency station, the business was considerable, and was growing rapidly, increasing in the number of passengers from a daily average of four daily in 1911, to nine daily in 1913, or more than one hundred per cent, while its gross earnings from passengers and freight traffic was increasing from $6,943.76 in 1911, to $10,717.54 in 1913, say fifty per cent., and this despite the fact that upon the whole system the receipts from passengers remained stationary, and the freight business showed some decrease.

This showing by the respondent indicates a steady growth of the business at this non-agency station not only in the aggregate for the year, but a decided improvement in the distribution of the business throughout the year.

The railroad Commission acts, if it sees fit, upon its own initiative in these regulations, and being a quasi-

legislative body, it is not necessary that it disclose to the railway company the name or names of dissatisfied shippers. It has a right to make physical examination of the conditions surrounding the station, the probabilities as to future growth in that vicinity, and to take into account the reports filed with it by the railway company of the business done there.

I read the statement in the return as to the accommodations already provided being ample to be merely the conclusion of the pleader from the facts pleaded in connection with such statement.

I do not find that any facts set up in the return overcome the *prima facies* of the Commission's order, and therefore I think the demurrer should be sustained.

SHACKLEFORD, J., concurs in this dissent.