THE STATE OF FLORIDA EX REL. RAILROAD COMMISSIONERS, *Relators,* v. ATLANTIC COAST LINE RAILROAD COMPANY AND CLYDE STEAMSHIP COMPANY, *Respondents.*

Opinion filed April 8, 1919.

1. While Congress has exclusive power to regulate interstate commerce, and the State may not, when Congress has exerted that power, interfere with, even in the otherwise just exercise of its police power, the State may in such a case act until Congress does exert its authority, even though interstate commerce may be incidentally affected.

2. When, in the absence of Federal regulations, State supervision of matters that incidentally affect interstate or foreign commerce, is permissible, the State authority is dominant; but upon the asserton of paramount Federal Authority, State regulations in the premises are thereby excluded.

3. Although wharves are related to commerce and navigation as aids and conveniences, yet being local in their nature, and

requiring special regulations at particular places, the juris-
diction and control thereof *in the absence of congressional
legislation on the subject*, properly belong to the States in
which they are situated.

4.  Where an Act of Congress relating to a subject on which
the State may act also, limits the scope of its regulations to
a portion of the subject, it leaves the subject open to State
regulation as to the matters not covered by the Federal reg-
ulations. In determining whether a Federal Act overrules
a State law, the entire scheme must be considered and that
which is implied has no less force than that which is ex-
pressed. The intent of Congress to supersede the exercise
by the States of their police power will not be inferred un-
less the Act of Congress, fairly interpreted, is in actual con-
flict with the law of the State,

5.  While Congress in the proper exercise of its paramount auth-
ority over foreign and interstate commerce, may provide
Federal regulations of wharves, and while a construction of
of regulations in derogation of Federal power over such
commerce is not favored, yet as wharves are local facilities
that do not require uniform regulation by a single author-
ity, they may be regulated by the States in which they are
located *until* Federal authority over them is asserted; and
a Federal regulation will not be extended to them so as to
supersede State authority unless an intent to assert Federal
sepervision or control is clearly manifest from the terms and
purposes of the Congressional action taken in the premises.

6   Where State authority is exerted to require the re-establish-
ment of a pre-existing local transportation facility by re-
building and repairing a wharf adjacent to and lying im-
mediately between a depot of a rail carrier and a river point
where a water carrier may land, such authority does not
conflict with the asserted Federal authority under the Canal
Act of August 24, 1914, to require physical connection be-
tween the lines of the rail and the water carriers by connect-
ing the *track* of the rail carrier with the docks of the water
carrier.

7.  Orders made by the Raidroad Commissioners within their statutory authority are as a matter of organic law not conclusive. If such an order is made without a legally sufficient evidentiary basis to support it, the order is not enforceable.

8.  Under the railroad commission statute of 1913, if it be made to appear by admissions in the pleadings having the effect of "clear and satisfactory evidence," that an order made by the Railroad Commissioners is not "reasonable and just," or that the order is not "such as ought to have been made in the premises," or that the order was not "properly arrived at in due form of procedure" or that the order is not "such as can and ought to be executed," the order should not be enforced by mandamus.

9.  In determining the validity and reasonableness of an order requiring wharf and depot facilities to be furnished, regard should be had for considerations that show whether the facilities may justly be required for the convenience and safety of the public to be served, and whether the expense to the carrier is so out of proportion to the advantage thereby afforded to the public or so affects its earnings as to impose an unlawful burden upon the carrier.

10.  When it does not clearly appear that an order of the Railroad Commissioners is unreasonable as to the nature or extent of the facilities required or as to the expense involved, and the order is otherwise valid, it will be enforced, and doubts if any will be resolved in favor of the order.

11.  It is within the province and duty of the Railroad Commissioners and the carrier to anticipate and provide for the *reasonable* requirement by prospective growth of the business done by the carrier.

12.  Where an order requiring depot facilities to be furnished is shown by the admissions of the pleadings to be so unreasonable with reference to the past and present conditions affecting the matter as to unlawfully invade the carrier's prop-

erty rights, the order should not be enforced by mandamus, particularly when it appears that the prospective growth of the carrier's business does not clearly warrant the requirements of the order sought to be enforced.

13. The functions of a demurrer to a return to an alternative writ of mandamus is to raise a question of law as to the right of the relator on the pleadings to the relief sought. All the allegations of fact that are, as a matter of pleading, sufficiently averred in the return, are for the purposes of the demurrer admitted to be true as averred.

14. On a demurrer to a return or answer in mandamus the law applicable to the facts duly stated and admitted is to be determined by the court; and the essential question, when properly presented, is whether the facts thus alleged and admitted are in law sufficient as a defense to the writ.

15. Unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners, and when it appears from the pleading or the evidence in a case that and order or regulation is unreasonable, or unjust with reference to all the substantial interests affected by it, or violative of constitutional provisions for the protection of property rights, such regulations will not be enforced by the courts.

16. Orders of the Railroad Commissioners requiring particular depot and transfer facilities to be furnished for the convenience, not for the safety, of patrons, will not be enforced by mandamus when the burden to the carrier would be so out of proportion to the benefits to accrue to the public as to show the orders to be unreasonable and unjust.

17. Motions to strike portions of  return to an alternative writ of mandamus will be denied when the averments sought to be stricken are not wholly irrelevant or improper.

24—Vol. 77.

A case of original jurisdiction.

Demurrer overruled.

*D. C. McMullen* and *Dozier A. DeVane*, for Relators;

*Kay, Adams & Ragland*, for Respondents.

WHITFIELD, J.—An alternative writ of mandamus was issued commanding the railroad company and the steamship company as common carriers to comply with, observe and obey an order of the railroad commissioners set out in the writ.

Among the allegations of the alternative writ are the following: "That the Atlantic Coast Line Railroad Company is a railroad corporation, and the said company owns and operates a line of railroad lying partly within the State of Florida, and extending therein from various points to Astor, Lake County, Florida, on the St. Johns river. That the Clyde Steamship Company is a corporation owning and operating steamhsips engaged in business from various ports within this State, including Astor aforesaid. That both of the said corporations are common carriers engaged in the business of transporting persons and property over their lines for hire, and hold themselves out as such common carriers for hire from various places to Astor and from Astor to various places within the State of Florida."

It is also alleged that notice was given to the respondent of a hearing at a meeting "to consider and determine whether or not the said Railroad Commissioners ought to make an order requiring the Atlantic Coast Line Railroad Company and Clyde Steamship Company, to pro-

vide such reasonable physical connections between their respective transportation lines as might be necessary to properly facilitate the transfer of freight and passengers from one of said carriers to the other, and also to consider and determine such other matters as might arise in the premises;" that a meeting and hearing were had; that "the Clyde Steamship Company did not appear, owing to an accident to one of their steamers, which detained Superintendent W. M. Tupper, who would otherwise have been present. There were also present a large number of residents from various parts of Lake County, and after hearing all who desired to be heard the said matter was taken under advisement.

"And now on this day the said matter came on for further and final consideration, and the Clyde Steamship Company, subsequent to the hearing, having caused to be filed wtih the Commissioners a statement to the effect that it was desirous of co-operating in the construction and maintenance of such reasonable physical connections between its line and the Atlantic Coast Line Railroad Company at Astor, aforesaid, as may be necessary to properly facilitate the transfer of freight and passengers from one of said carriers to the other, and the Commissioners having made physical examination of the location with a view to determining the practicability of providing such connections, do find that the convenience of shippers and passengers to and from a large section of Lake County, together with the possibility of a large increase in traffic when necessary physical connections are provided, entirely justifies the requirement of such physical connections; and further find that the most economical and practical method of providing such physical connections, is to rebuild and repair the wharf adjacent to

and lying immediately between the depot of the Atlantic Coast Line Railroad Company and the St. Johns river in Astor, where physical connections were formerly maintained between the said carriers.

"WHEREFORE, it is CONSIDERED, ORDERED AND ADJUDGED that you the Atlantic Coast Line Railroad Company and Clyde Steamship Company rebuild and repair the wharf adjacent to and lying immediately between the depot of the Atlantic Coast Line Railroad Company and the St. Johns River in Astor, Florida, by placing the same in such condition that freight or passengers shall be safely, securely and conveniently transferred over the said wharf from one of said carriers to the other."

Demurrers to the alternative writ were overruled.

By answer or return to the alternative writ, the respondents in effect aver that the subject-matter is under Federal control to the exclusion of State authority; that the evidence does not show a public necessity for the physical connection ordered to be made; that the order is unreasonable and its enforcement would violate respondents' property rights secured by organic law.

The relators demurred to the return or answer, moved to strike portions of the return or answer containing averments of fact set up to show the order to be invalid, and also moved for a peremptory writ on the pleadings.

The State statute authorizes the Railroad Commission "to require railroads and water carriers serving any given point or community as common carriers of freight and passengers to provide such reasonable physical connection as may be necessary to properly facilitate the

transfer of freight or passengers from one of said carriers to the other." And "to require * * * the establishment of landings and wharves at which water carriers may be required to stop; to disignate the location and require the erection of such freight and passenger depots, houses, platforms and wharves with all necessary conveniences as to the safety, convenience and comfort of passengers and the proper handling, care, protection and prompt delivery and transportation of freight may require." Sec. 3, Chap. 6527, Acts of 1913; Sec. 2893, Comp. Laws, 1914. See, also, Chap. 6977, Acts of 1915.

The Act of Congress provides that "when property may be or is transported from point to point in the United States by rail and water through the Panama Canal or otherwise, the transportation being by a common carrier or carriers, and not entirely within the limits of a single State, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars * * * to establish physical connection between the line of the rail carrier and the dock of the water carrier by directing the rail carrier to make suitable connection between its line and a track or tracks which have been constructed from the dock to the limits of its right of way, or by directing either or both the rail and water carrier, individually or in connection with one another, to construct and connect with the lines of the rail carrier a spur track or tracks to the dock. This provision shall only apply where such connection is reasonably practicable can be made with safety to the public, and where the amount of business to be handled is sufficient to justify the outlay." Sec.

11, Act August 24, Chap. 390, Fed. Stats. Ann. Suppl. 1914, p. 371.

While Congress has exclusive power to regulate interstate commerce, and the State may not, when Congress has exerted that power, interfere therewith, even in the otherwise just exercise of its police power, the State may in such a case act until Congress does exert its authority, even though interstate commerce may be incidentally affected. Sligh 1. Kirkwood, 237 U. S. 52, 35 Sup. Ct. Rep. 501.

When, in the absence of Federal regulations, State supervision of matters that incidentally affect interstate or foreign commerce, is permissible, the State authority in dominant; but upon the assertion of paramount Federal authority, State regulations in the premises are thereby excluded. Sligh v. Kirkwood, 65 Fla. 123, 61 South. Rep. 185; Northern Pac. Co. v. State of Washington ex rel Atkinson, 222 U. S. 370, 32 Sup. Ct. Rep. 160; Atkinson, T. & S. F. R. Co. v. Harold, 241 U. S. 371, 36 Sup. Ct. Rep. 665; Flanders v. Georgia Southern & F. R. Co., 68 Fla. 479, 67 South. Rep. 68; Louisville & N. R. Co. v. Rhoda, 73 Fla. 12, 74 South. Rep. 19; Louisville & N. R. Co. v. State, —Ala. App. —, 76 South. Rep. 505; Southern R. Co. v. Indiana Railroad Commission, 236 U.S. 439, 35 Sup. Ct. Rep. 304; Missouri, K. & T. R. Co. of Texas v. Harris, 234 U. S. 412, 34 Sup. Ct. Rep. 790; Atlantic Coast Line R. Co. v. State of Georgia, 234 U. S. 280, 34 Sup. Ct. Rep. 829; Texas & P. R. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. Rep. 482; State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175.

"Although wharves are related to commerce and navigation as aids and convenience, yet being local in their

VOL. 77, JANUARY TERM, 1919.      375

State ex rel. R. R. Com. v. A. C. L. R. R. & Clyde S. Co.—Opinion of Court

nature, and requiring special regulations at particular places, the jurisdiction and control thereof in the absence of congressional legislation on the subject, properly belonging to the States in which they are situated." Transportation Company v. Parkersburg, 107 U. S. 697, 2 Sup. Ct. Rep. 732; Simpson v. Shepard, 230 U. S. 352, text 405, 33 Sup. Ct. Rep. 729; 12 C. J. 41.

Where an Act of Congress relating to a subject on which the State may act also limits the scope of its regulations to a portion of the subject it leaves the subject open to State regulation as to the matters not covered by the Federal regulations. In determining whether a Federal Act overrules a. State law, the entire scheme must be considered and that which is implied has no less force than that which is expressed. The intent of Congress to supersede the exercise by the States of their police power will not be inferred unless the Act of Congress, fairly interpreted, is in actual conflict with the law of the State. Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. Rep. 715.

While Congress in the proper exercise of its paramount authority over foreign and interstate commerce may provide Federal regulations of wharves, and while a construction of regulations in derogation of Federal power over such commerce is not favored, yet as wharves are local facilities that do not require uniform regulation by a single authority, they may be regulated by the States in which they are located until Federal authority over them is asserted; and a Federal regulation will not be extended to them so as to supersede State authority unless an intent to assert Federal supervision or control is clearly manifest from the terms and purpose of the Con-

gressional action taken in the premises. Missouri, K. & T. R. Co. of Texas v. Harris, 234 U. S. 412, text 419, 34 Sup. Ct. Rep. 790; Illinois Cent. R. Co. v. Public Utilities Commission, 245 U. S. 493, text 510, — Sup. Ct. Rep. —.

In this case the State authority is exerted to "rebuild and repair the wharf adjacent to and lying immediately between the depot of the" rail carrier and the river where the water carrier lands. This relates to a pre-existing local transportation facility and does not manifestly or apparently conflict with the asserted Federal authority to require physical connection "*by*" connecting the *track* of the rail carrier with the *dock* of the water carrier. See Sligh v. Kirkwood, *supra*. ·

The Federal authority in the matter here considered is by the quoted Act of Congress limited to connections between the track of the rail carriers and the docks of water carriers. This limitation does not by its terms or purpose extend the Federal authority to the rebuilding of wharves. There is a separate field of operation for each authority; and the State regulations should not be excluded until the Federal authority is asserted in a manner to cover the subject of rebuilding wharves. Both acts refer in a general way to "physical connections" between carriers; but the Federal Act as to this subject is expressly limited to track connections with docks. The decision of the Interstate Commerce Commission in Pensacola Wharf Discrimination Case, 27 I. C. C. 252, was predicated upon express authority as to traffic and the charges therefor, given by the Panama Canal Act of 1912. See subdivisions A and C, Panama Canal Act.

The State statute authorizes the Railroad Commissioners "to designate the location and require the erection of

* * * wharves with all necessary conveniences as to the safety, convenience and comfort of passengers," etc. This gives authority to designate the actual location of a wharf for the "safety, convenience," etc., of traffic, and does not limit the authority to the actual necessities of traffic. This order is "to rebuild and repair the wharf," "where physical connections were formerly maintained between the said carriers." The wharf to be rebuilt does not appear to be any part of a track connection between the rail carrier's road and the water carrier's dock, there-fore, it is not covered by the Act of Congress and is with-in the regulating power of the State.

Authority to make an order in the premises appearing, the question to be determined is whether the order as made is enforceable by mandamus. Orders made by the Railroad Commissioners within their statutory authority are, as a matter of organic law, not conclusive. If such an order is made without a legally sufficient evidentiary basis to support it, the order is not enforceable. See Seabord Air Line Ry. v. Railroad Commission of Georgia, 240 U. S. 324, 36 Sup. Ct. Rep. 260; Wisconsin M. & P. R. Co. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. Rep. 115; State of Washington *ex rel.* Oregon R. & Navigation Co. v. Railroad Commissioners of State of Washington, 224 U. S. 510, 32 Sup. Ct. Rep. 535; Great Northern Ry. Co. v. State of Minnesota *ex rel.* State Railroad & Warehouse Commission, 238 U. S. 340, 35 Sup. Ct. Rep. 753; Inter-state Commerce Commission v. Louisville & N. R. Co., 227 U. S. 88, text 91, 92, 33 Sup. Ct. Rep. 185; Florida East Coast Ry. Co. v. United States, 234 U. S. 167, text 185, 34 Sup. Ct. Rep. 867; Louisville & N. R. Co. v. United States, 238 U. S., 35 Sup. Ct. Rep. 696; Interstate Commerce Commission v. Great Northern R. Co. 222 U. S. 541,

32 Sup. Ct. Rep. 108; State ex rel. Railroad Commissioners v. Florida East Coast Ry. Co. 64 Fla. 112, 67 South. Rep. 906.

Under the statute all presumptions are in favor of the action taken by the Commissioners, and the order made by them "shall be deemed and held to be reasonable and just and such as ought to have been made in the premises and to have been properly arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears." This statutory provision apparently extends the inquiry in proceedings of this character to errors in making orders, whereas prior to the enactment of the statute the enquiry was confined to questions of exceeding statutory powers and to abuses of authority, questions of mere error not being considered. State *ex rel.* Railroad Commissioners v. Florida East Coast R. Co., 67 Fla. 83, 64 South. Rep. 443.

In view of the above quoted statute if it be made to appear by admissions in the pleadings having the effect of "clear and satisfactory evidence" that the order in this case is not "reasonable and just," or that the order is not "such as ought to have been made in the premises," or that the order was not "properly arrived at in due form of procedure," or that the order is not "such as can and ought to be executed," the order should not be enforced by mandamus.

In determining the validity and reasonableness of an order requiring wharf and depot facilities to be furnished regard should be had for considerations that show

whether the facilities may justly be required for the convenience and safety of the public to be served, and whether the expense to the carrier is so out of proportion to the advantage thereby afforded to the public or so affects its earnings as to impose an unlawful burden upon the carrier. See State *ex rel.* Railroad Commissioners v. Florida East Coast Ry. Co., 69 Fla. 165, 67 South. Rep. 906. When it does not clearly appear that the order is unreasonable as to the nature or extent of the facilities required or as to the expense involved, and the order is otherwise valid, it will be enforced, and doubts, if any, will be resolved in favor of the order. State *ex rel.* Railroad Commissioners v. Florida East Coast R. Co., 67 Fla. 83, 64 South. Rep. 443. It is within the province and duty of the Railroad Commissioners and the carrier to anticipate and provide for the *reasonable* requirements by prospective growth of the business doen by the carrier. State *ex rel.* Railroad Commissioners v. Florida East Coast R. Co., 67 Fla. 83, text 101, 64 South. Rep. 443; Louisville & N. R. Co. v. Railroad Comm'rs, 63 Fla. 491, 58 South. Rep. 543.

But where an order requiring depot facilities to be furnished is shown by the admissions of the pleadings to be so unreasonable with reference to the past and present conditions affecting the matter as to unlawfully invade the carrier's property rights, the order should not be enforced by mandamus, particularly when it appears that the prospective growth of the carrier's business does not clearly warrant the requirements of the order sought to be enforced.

The functions of a demurrer to a return to an alternative writ of mandamus is to raise a question of law as to the right of the relator on the pleadings to the relief

sought.   All the allegations of fact that are, as a matter of pleading, sufficiently averred in the return, are for the purpose of the demurrer admitted to be true as averred. The law applicable to the facts duly stated and admitted is to be determined by the court; and the essential question, when properly presented, is whether the facts thus alleged and admitted are in law sufficient as a defense to the writ.   State *ex rel.* Railroad Commissioners v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; State *ex rel.* Railroad Commissioners v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385; State *ex rel.* Railroad Commissioners v. Atlantic Coast Line R. Co., 67 Fla. 441, 63 South. Rep. 729; State *ex rel.* Railroad Commissioners v. Florida East Coast Ry. Co., 71 Fla. 433, 71 South. Rep. 543.

Unreasonable regulations are not within the authority conferred by law upon the Railroad Commissioners, and when it appears from the pleading or the evidence in a case that an order or regulation is unreasonable, or unjust with reference to all the substantial interests affected by it, or violative of constitutional provisions for the protection of private property rights, such regulations will not be enforced by the courts.   State *ex rel.* Railroad Comm'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 64 Fla. 112, 59 South. Rep. 385. There is a distinction in character and importance between the duties which a railroad company owes to the public.   The duty to provide fit and suitable roadbeds and tracks and rolling stock may be distinguished from the duty to provide a particular character of stations and depots and connections along its line of road.   The former may be classed as a duty vitally necessary to the

VOL. 77, JANUARY TERM, 1919.     381

State ex rel. R. R. Com. v. A. C. L. R. R. & Clyde S. Co.—Opinion of Court

public and its performance absolutely essential, while the latter may be a useful convenience, but under some circumstances a particular facility may not be an absolute duty.  One makes for the security of the lives and property of all its patrons, the other for the convenience and comfort of some of its patrons.  The one is an essentially higher and more important duty than the other. In the one case the fact that the performance of the particular duty will be unremunerative will not, in view of the nature of the duty to the public, excuse non-performance, while in the other, the fact that the particular service may incur a loss to the railroad company does not excuse non-performance, the loss occasioned by its performance may be considered in determining the reasonableness of the order requiring it to be performed.  See State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, text 358, 57 South. Rep. 175; State *ex rel.* Railroad Com'rs. v. Florida East Coast Railway Co., 67 Fla. 83, 64 South. Rep. 443; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 165, 67 South. Rep. 906; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 71 Fla. 433, 71 South. Rep. 543.

The averments of the return, too voluminous to be set out here, as to the amount of business affected by the connection facilities sought to be enforced, as to the number of persons to be served, as to the advantages and conveniences to accrue to the public, as to the public necessity for the particular facilities, as to the revenues to be derived from the business so affected, and as to other pertinent matters all of which are admitted by the demurrer, clearly show that the advantages to the public will be greatly disproportionate to the direct and con-

tinuing burden to the respondent railroad company upon which company the expense and loss will fall. As the duty to furnish the facilities is not an absolute one that should be performed without reference to the burdens and benefits, the burden to the respondent railroad company, being so out of proportion to benefits to it and to the public, should have its proper weight in determining whether the order is reasonable and just as the statute requires it to be. From the admissions of the demurrer it "plainly appears" as is shown by clear and satisfactory evidence" that the order is not "reasonable and just," and is not "such as ought to have been made in the premises," and is not "such as can and ought to be executed," within the meaning of the quoted statute; therefore, in accordance with the express provisions of the statute, the order should not be enforced as the record now stands.

The motion to strike portions of the return should be denied since the averments are not wholly irrelevant or improper. State ex rel. Railroad Com'rs. v. Florida East Coast R. Co., 65 Fla. 424, 62 South. Rep. 591.

The demurrers to the return are overruled, the motions to strike portions of the return and for a peremptory writ are denied.

Relators may join issue on the return and have appropriate proceedings for taking testimony if desired.

It is so ordered.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.