The Federal Transportation Act, paragraph 17, Section 402, provides: "That nothing in this Act shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this Act." Railroad Commission of the State of California v. Southern Pac. Co., 264 U.S. 331, 44 Sup. Ct. Rep. 376.
The Supreme Court of the United States has held that under the Interstate Commerce Act and the Amended Transportation Act of Congress, where the establishment of a railroad union terminal station involves a substantial change in destination, or a real addition to or abandonment of the main tracks and terminals of interstate railroad carriers with important changes in the handling of interstate traffic and passengers, all at great expense requiring substantial capital outlays, the matter is within the jurisdiction of the Interstate Commerce Commission to the exclusion *Page 434 
of State authority; and that in the absence of lawful orders of the Interstate Commerce Commission in the premises, State Commissions may have jurisdiction to direct the construction of merely local union stations or terminals not requiring the abandonment of main tracks and terminals and substantial changes in destination of interstate carriers' facilities or extensions of main tracks and not necessarily requiring substantial capital outlay. Railroad Commission of the State of California v. Southern Pac. Co., supra.
"The State, in the exercise of its police power, directly or through an authorized commission, may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. But its power to regulate is not unlimited. It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business. Mississippi R. R. Commission v. Mobile O. R. Co., 244 U.S. 388, 390, 391, 37 Sup. Ct. Rep. 602. The validity of regulatory measures may be challenged on the ground that they transgress the Constitution; and thereupon it becomes the duty of the court, in the light of the facts in the case, to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void. Wisconsin, M. P. R. Co. v. Jacobson, 179 U.S. 287, 297, 301, 21 Sup. Ct. Rep. 115; Burns Baking Co. v. Bryan,264 U.S. 504, 44 Sup. Ct. Rep. 412. Railroad carriers may be compelled by State legislation to establish stations at proper places for the convenience of their patrons. Minneapolis St. L. R. Co. v. Minnesota ex rel. Railroad Warehouse Commission,193 U.S. 53, 63, 24 Sup. Ct. Rep. 396. Any measure promulgated by the State to require a railroad company to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers does not create a new duty or impose any *Page 435 
unnecessary burden." Norfolk W. R. Co. v. Public Service Commission of West Virginia, 265 U.S. 70, text 74, 44 Sup. Ct. Rep. 439.
The alternative writ alleges that the two railroad companies "are operating a joint passenger terminal or union depot at Lake City, Florida, and operate daily passenger trains, over different lines of railroad," to and from "said joint passenger terminal or union depot" from and to other points in the State of Florida, one company "using the platform facilities on the south side of said depot" and the other company "using the platform facilities on the north side of said station."
The order sought to be enforced states that the railroad commissioners "do find from the evidence adduced before them," that the passengers of one of the companies "entrain and detrain from the south side of said depot" and that the passengers of the other company "entrain and detrain from the north side of said depot," "that the union depot facilities afford no protection from rains of passengers getting on or off trains at said union depot, and that the comfort and convenience of passengers require the construction and maintenance, in connection with said depot, of suitable umbrella or canopy sheds to protect entraining and detraining passengers from rain at said point." This finding shows a duty to furnish a facility for passenger transportation that is local in its nature and reasonable in its import.
The Federal authority has not been extended to the regulation of railroad companies in the mere erection of sheds for the safety, comfort and convenience of passengers entraining and detraining on their several lines at joint depots, at least where such regulations do not involve an interference with or a burden upon interstate commerce. The order here sought to be enforced does not appear to conflict with Federal authority or to be arbitrary or unreasonable. *Page 436 
The enforcement of such an order will not burden or interfere with interstate commerce. It will serve a useful purpose. The State Railroad Commission has the authority to make a legal and appropriate order in the premises. Louisville N. R. Co. v. Railroad Com'rs., 63 Fla. 491, 58 South. Rep. 543; Chap. 8469, Acts 1921; State ex rel. v. Atlantic Coast Line R. Co. et. al.,77 Fla. 366, 81 South. Rep. 498.
The command of the order is that the two companies "be and they are hereby ordered and directed to erect and maintain in connection with the south side of said union depot, a suitable umbrella or canopy shed" * "on the main line track of the S. railway between said depot and main line track three hundred and fifty feet east paralleling such main line track, and connected with said depot so as to protect from rain passengers passing from said depot to entrain and passengers passing from trains into said depot," and "to erect and maintain at said city, in connection with the north side of said joint passenger terminal or union depot, a suitable umbrella or canopy shed, * for the purpose of protecting from rain passengers entraining from and detraining on the north side of said depot; such shed to be south of and adjacent to the track G Railway Company located nearest to said union depot on the north and commonly called 'passing track,' and to parallel said track for a distance of one hundred feet, and to be conveniently located and connected up with the north entrance of said depot by an additional umbrella or canopy extension so as to protect from rain passengers passing from said depot from trains of the G. Railway Company."
It is apparent that the "joint passenger terminal or union depot" referred to in the alternative writ is a building erected between the line tracks of the two railroad companies as such tracks intersect at Lake City, Florida, in which building there is doubtless appropriate waiting *Page 437 
rooms, ticket offices, toilets, seats, c., used by passengers of both railway companies. It is also apparent that the sheds ordered to be erected are not to be a part of, but to be an adjunct to and used "in connection with" the building used as "a joint passenger terminal or union depot," the sheds to be erected to the north and to the south of the depot building and along side of the railroad tracks of each company, one 350 feet and the other 100 feet in length. Such sheds would not be physically a part of the "depot" building that is located between the tracks of the two lines of railway, and that presumably by agreement stands partly on the right of way of each railway company; but such sheds would apparently be upon the separate right of way of each company. It does not appear that each company has a right or a duty to erect a shed along the line track of the other company, or that one company owes a duty to passengers entraining or detraining on the line of the other company. If no such right or duty exists by law or by agreement it cannot be conferred or enforced by the order made without conceivably violating the property rights of the respondents. On the showing made the joint rights and duties of the respondents have relation to the "depot" that is jointly used by them. The rights and duties of each company as to passengers entraining and detraining on the respective and wholly separate lines on different sides of the "depot" are apparently several, not joint, except as to the use of the building and its immediate facilities that are jointly used as a "terminal or union depot" by both companies. If the S. Company has no right or duty to erect a shed along the line track of the G. Company, it would be a trespasser to do so, andvice versa. The order commands the companies jointly to erect the two sheds. Obedience might render each company a trespasser and a violator of the law. It might also in effect take the property of one for the use of the other in violation of organic rights. *Page 438 
The order does not require the two railroad companies to enlarge or improve their "joint passenger terminal or union depot," but it requires the two companies to jointly erect sheds along the line tracks of each company, which sheds, though connected with the passenger depot, are apparently not for joint use, but for the use of the passengers of each railroad severally.
While passengers may use both sheds in passing from one railroad line to the other, still the sheds are not a part of the jointly used depot, but each shed is that of the particular company alone; and after leaving the joint depot and its immediate accessories, the passengers are served by each road severally and not jointly in the sheds and facilities required for safe, comfortable and convenient entraining and detraining on each line severally.
Even if the railroad commissioners had power to order the two companies to jointly erect the same length of shed on each line, the order here is to erect a shed extending 350 feet along the line track of the S. Company and only 100 feet along the line track of the G. Company.
When a writ of mandamus is applicable it should be framed to meet the exigencies of the case. When a relator is entitled to a writ of mandamus, he should have an effective writ. See Stateex rel. Knott v. Haskell, 72 Fla. 176, text 206, 72 South. Rep. 651. See also State ex rel. Railroad Com'rs. v. Louisville N. R. Co., 62 Fla. 315, text 369, 57 South. Rep. 175.
The statute provides that "If in any proceeding to enforce any rule, regulation, schedule or order, any part thereof shall be found invalid, the court shall proceed to enforce such portion thereof as may be valid if the same can be done." Sec. 4618, par. 13, Rev. Gen. Stats. 1920.
The relators would be entitled to a judicial enforcement of a legal order requiring adequate sheds to be constructed *Page 439 
along the respondents' railroad tracks for the comfort and convenience of passengers entraining and detraining at the union depot at Lake City; but on the showing made, apparently the order should be framed with an appropriate command to each of the respondents severally to construct a shed along its line track.